CRIPPEN *v.* MORRISON.

---

### Philo H. Crippen v. John H. Morrison and Others.

*Who entitled to fixtures, as between a mortgagee thereof and a prior mortgagee of the land.* — H. mortgaged his land to secure the payment of money borrowed, upon his verbal agreement to erect a steam saw mill on the premises. Subsequently the plaintiffs constructed and set up in said mill a steam engine and appurtenances; it being agreed, at the time they were contracted for, that H. should secure the purchase money by a mortgage upon them, and also by a mortgage upon said land, and that until said mortgages were executed, the engine, etc., should remain the property of the plaintiffs. H. executed the mortgages, pursuant to said agreement, and they were duly filed and recorded, and kept alive until this suit was commenced. The first mortgagee brought his bill for foreclosure, making the plaintiffs parties thereto, and the usual decree was made, and the land sold under it to the defendant in this suit, to whom, previous to such sale, all the interest of said first mortgagee had been sold, with notice that it did not embrace

CRIPPEN v. MORRISON.

the machinery; — *Held*, That the plaintiffs were entitled to recover the value of said engine, etc., of the defendant, who, upon demand made, had refused to deliver them up; —

*Held, also*, That the machinery not having been put up when the original mortgage upon the land was given, and the defendant having notice at the time of the assignment to him, that the machinery was not embraced in it, he was not, as against the plaintiffs, a *bona fide* purchaser.

Whether, if defendant had been a *bona fide* purchaser, it would have been otherwise: *Quere.*

*Rights of mortgagor before foreclosure.* — A mortgagor, since the statute — 2 *Comp. L.*, §4614 — forbidding possessory actions against him until actual foreclosure, is in possession by right, and not by sufferance, and may make such arrangements for the use of the property as any other person could during his term.

*Decree in ordinary foreclosure suits.* — *How it affects fixtures.* — The plaintiffs having a mortgage on the real estate were, on that ground, proper parties to the foreclosure suit, and it not appearing that the bill in that case was filed for any other purpose than a simple foreclosure, nor that the decree differed from the usual form in such cases; — *Held*, That said decree was not a bar to plaintiffs' claim to said fixtures.

*Heard April* 7 *and* 8. *Decided October* 27.

Error to Branch Circuit.

Trover for steam engine, etc.

The case was tried by the Court, who found the facts, and rendered judgment upon the finding for the plaintiffs.

The facts are sufficiently stated in the opinion of the Court.

*Newberry & Pond*, for plaintiffs in error:

I. The nature of the property in controversy, the circumstances under, and the manner in which the same was attached to the freehold, are such as to constitute it, as between vendor and vendee, and hence between mortgagor and mortgagee of the freehold, a fixture within the overwhelming weight of authorities. — 2 *Smith's leading cases*, (*edition* 1852,) 214, 15, 221; *Walmsley, et al., v. Milne*, 8 *Law Reg.*, 373; *Winslow v. Merchants' Ins. Co.,* 4 *Met.*, 306; *Powell v. the M. & B. Manf'g Co.*, 3 *Mason,* 459; *Roberts v. the Dauphin, Dep. Bank*, 19 *Penn.*, 71; *Farran v. Stackpole*, 6 *Greenleaf*, 154; *Sparks, et al., v.*

CRIPPEN *v.* MORRISON.

*State Bank*, 7 *Blk'f*, 469; *Walker v. Sherman*, 20 *Wend.*, 644; *Morgan v. Arthurs, et al.*, 2 *Watts.*, 140; *Oves v. Ogelsby*, 7 *Watts.*, 106; *House v. House*, 10 *Paige*, 158; *Harkness v. Sears, et al.*, 26 *Ala.*, 493; *Allison v. McCune*, 15 *Ohio*, 729; *Rice v. Adams*, 4 *Har.*, 332; *Hill v. Wentworth*, 28 *Vt.*, 428.

And as between mortgagor and mortgagee, although attached to the freehold, subsequently to the execution of the mortgage. — 2 *Smith's leading cases, (edition* 1855,) 254; *Winslow v. Merchants' Ins. Co.*, 4 *Met.*, 306; *Walmsley v. Milne*, 8 *Law Reg.*, 373; also, other cases above cited.

II. The agreement between Hall, the owner of the equity of redemption of the freehold, and defendants in error, under which said engine was attached to the freehold, did not and could not operate to prevent or save the same from becoming a fixture, and part of the freehold, as to the said prior mortgage and those claiming under it.

I. *Upon Principle.* — For nothing is more self-evident than that no man can grant to another that (either property or right,) which he does not himself possess.

II. *Upon Authority.* — 1. Authorities directly in point: *Frankland, et al., v. Moulton*, 5 *Wis.*, 16; *Richardson v. Copeland*, 6 *Gray*, 536; *Preston v. Briggs*, 16 *Vt.*, 124.

2. Authorities in point by analogy: *a.* Holding that if one having a lien upon a chattel (such as a steam engine,) permits it to be attached to a freehold which is subject to a mortgage, he loses his lien as against such mortgage. — *Jones v. Hancock*, 1 *Md. Ch. Dec.*, 187; *McKim v. Mason, et al.*, 3 *Md. Ch. Dec.* 186; *Denmead v. Bank of Baltimore*, 9 *Md.*, 179; *Lyle v. Ducomb*, 5 *Binney*, 585; *Dutro v. Wilson*, 24 *Ohio*, 101. *b.* Holding that a mortgagee of the freehold, upon entering into possession under a foreclosure of his mortgage, is entitled to the growing crops. — 1 *Hilliard on Mortgages*, 161, note *c;*

13 MICH. — C.

*Lane v. King*, 8 *Wend.*, 584; *Shepard v. Philbrick*, 2 *Denio.*, 174; *Gillet v. Balcom*, 6 *Barb. Ch.*, 270; *Jones v. Thomas*, 8 *Blkf.*, 428. And. this, too, as against a lessee of the mortgagor. — *Lane v. King, supra; Jones v. Thomas, supra.*   c. Holding that a mortgagee of a freehold, or a purchaser of the premises under a foreclosure, cannot claim the benefit of, and is not bound by any contract made by the mortgagor relative to the mortgaged premises. — *Thompson v. Sommerville*, 16 *Barb.*, 469.

The statute — *Comp. Laws*, § 4614 — forbidding ejectment by a mortgagee for the mortgaged premises until after foreclosure, was not intended to, and has not "altered the law as to the interest vested in the parties to the mortgage." It has merely affected the remedy. — *Phyfe v. Riley*, 15 *Wend.*, 248; *Gillett v. Eaton*, 6 *Wis.*, 30; *Tallman v. Ely*, 6 *Wis.*, 244; *Jones v. Thomas*, 8 *Blkf.*, 431.

III. If defendants in error ever had any right as against the said prior mortgage of the freehold to remove said engine from said mortgaged premises, they were bound to exercise such right before possession was taken by plaintiff in error, as purchaser under the foreclosure of said mortgage. And having failed to do so, said engine became the property of the plaintiff in error. — *Taylor's Landlord and Tenant*, §§ 551, 552, 553; 2 *Smith's leading cases*, (edition 1855,) 248, 259, 260, 261; *Lee v. Risdon*, 7 *Taunt.*, 188; *Lyde v. Russell*, 1 *Barn. & Adol.*, 394; *Colegrave v. Dias Santos*, 2 *Barn. & Cress.*, 77; *Weeton v. Woodcock*, 7 *M. & Wellsby*, 14; *Longstaff v. Meagoe*, 2 *Ad. & Ellis*, 167; *Raffey v. Henderson*, 17 *Ad. & Ellis*, 573; *White v. Arndt*, 1 *Whart.*, 91; *Powell v. Smith*, 2 *Watts.*, 126; *Overton v. Williston*, 31 *Penn.*, 155; *Stockwell v. Marks*, 17 *Maine*, 455.

IV. Defendants in error having been made parties

CRIPPEN v. MORRISON.

defendant to the suit to foreclose the mortgage under which plaintiff in error claims, and the question of their right to said engine being one which might, and ought, to have been there litigated, it is *res adjudicata.*

Defendants in error were, as to their rights in said engine, if any they had, proper and necessary parties to said bill. Their interest was not in a chattel, but in the freehold; for the engine, until severed, was a part of the freehold. Their interest was merely a right, as against the mortgagor, to sever it. — *Ferrard on Fixtures,* and cases cited; *Preston v. Briggs,* 16 *Vt.,* 124.

*Riley & Shipman,* for defendants in error:

The common law held that whatever was affixed to the soil became a part of the inheritance, and the only exception seems to have been where fixtures were erected by tenants on particular estates, under circumstances which denoted an intention to remove them, during the continuance of the estate, or at its termination. — *Am. leading cases, vol.* 2, *p.* 746.

But the limits of this exception have been gradually extended, and even in England, barns and sheds may be erected as personal property, and removed from the land by the person to whom they belong, provided they have been erected in such a manner that they may be taken down without injuring the freehold. — *Am. leading cases, vol.* 2, *p.* 746; *Wood v. Hewett,* 8 *Q. B.,* 913.

But the American Courts have been disposed to pay less attention to the nature of the structure, or the question whether it is built into, or placed upon the land, and more to *the circumstances under which it was erected,* and have repeatedly held that a house, or other building, will not be merged in the land on which it stands in consequence of the solidity of its structure, or the connection between it and its foundations, *if the agreement of the parties, and the purposes of justice, require that*

*the title to both be kept separate,* and that the owner or the house should have the right to enter for the purpose of using it as his own, or removing it, — *Am. leading cases, vol.* 2, *p.* 747.

This doctrine was propounded at a comparatively early period, in *Wells v. Banister,* 4 *Mass.,* 514, and has been recognized and applied in a number of subsequent instances, which establish that a house erected on the land of another, in pursuance of an authority given by him, remains the property of the builder, who may maintain trover for its wrongful asportation or demolition, and he has a right to enter for the purpose of taking it away, which cannot be barred by the prohibition of the owner of the soil, or a revocation of the authority under which it was built. — *Am. leading cases, vol.* 2, *p.* 742; *Osgood v. Howard,* 6 *Greenleaf,* 452; *Barnes v. Barnes,* 6 *Vt.,* 388; *Doty v. Gorham,* 5 *Pick.,* 487; *Fletcher v. Com. Ins. Co.,* 18 *Pick.,* 419; *Russell v. Richards,* 10 *Maine,* 429, 11 *Maine,* 371, 12 *Maine,* 462.

CAMPBELL J.:

Defendants in error brought an action of trover for the conversion of a steam engine and its appurtenances, which they claimed under the following circumstances: Francis A. Hall mortgaged certain lands in Batavia, Branch County, amounting to 572 acres, to one Hiscock, October 22, 1856, for $4,000; and this money was borrowed under a verbal agreement that Hall should erect a saw mill on the premises. On the same day, Hall contracted with defendants in error to build and put up the engine in question, he agreeing to put up a suitable mill frame and engine-house to receive it, and upon its acceptance to execute back a chattel mortgage on the engine, and a mortgage upon the land, which was already subject to the Hiscock mortgage. It was expressly agreed that the engine and appurtenances should continue to be the property of defendants in error, until they should

receive the mortgage securities on the chattels, and on the real estate. On April 15, 1857, these securities were delivered, the machinery having been accepted. They were properly filed and recorded, and kept alive till suit. October 10, 1857, Hiscock commenced a foreclosure suit, making defendants in error parties with the other persons interested in the land. A decree was obtained December 31, 1858, for the amount of $820, then due; and June 25, 1860, a further decree was obtained for installments subsequent to the first decree. Before the first decree, and in October, 1857, about two weeks after the foreclosure suit was commenced, Hiscock assigned $3,860.44 of the mortgage money to one William P. Morley, who was not a party to the bill. August 24, 1858, and before any decree, Morley assigned to Crippen, (the defendant below, and plaintiff in error,) informing Crippen that he had no interest in the machinery. December 31, 1859, Hiscock assigned the remaining interest in the mortgage to Crippen. Prior to July 26, 1858, and before Crippen obtained any interest in the mortgage, the machinery was taken down, and stored in the mill building. One Laman then became owner of the property and machinery mortgaged, and, in Crippen's presence, promised to pay the Hiscock mortgage, and the claim of defendants in error. Laman subsequently put up the machinery again in the mill. October 4, 1860, Crippen bid in the lands on the foreclosure sale, and the sale was confirmed October 30th. He took possession of everything, and subsequently took down the machinery, using a part in another mill, and storing the rest. In November, 1860, a demand was made for the machinery by defendants in error, at the mill. In February, 1861, a further demand was made at Crippen's barn, where some of the property was then stored. He made no reply whatever to either demand. The Circuit Court gave judgment against Crippen for a conversion.

The rules which apply to personal property after it has been put to any use in connection with land, are not uniformly agreed on, and any attempt to harmonize all the authorities would be idle. We must, in all these cases, adopt such conclusions as appear most in accordance with the general doctrines of the law.

At the Common Law, personal property, as a general rule, never lost its identity in realty, unless so closely incorporated with it that it could not be separated without injury to the freehold. And even under the peculiar preference given by the English law to trade over agricultural improvements, buildings erected for farming uses, although resting upon foundations of masonry, were not considered as real estate as against the tenant, if capable of being removed without injury. In *Wansbrough v. Maton*, 4 *Ad. & El.*, 884, it was held expressly that a barn resting upon a masonry foundation, and capable of removal, was no part of the freehold, and was therefore, in all respects, the chattel of the tenant who built it. This case is based upon a former decision in *Rex v. Otley*, 1 *B. & Ad.*, 161, where the question did not arise between landlord and tenant, but was decided upon the nature of the property itself. There a person owning land upon which was a windmill, consisting of a wooden mill and its machinery, resting upon, but not fastened to, a brick foundation, leased the land and the mill to a tenant. The rental value of the whole property was thirty pounds, of which more than twenty pounds represented the rent of the mill. It was held that the mill was no part of the realty, and that the tenant could not be regarded, therefore, as holding a tenement of the value of ten pounds.

In regard to erections made by tenants for purposes of trade or manufacture, an exception was early raised in their favor, allowing them to remove erections made

for those purposes, although actually annexed to the freehold in a substantial way. But inasmuch as these erections had, during the tenancy, become actual parts of the freehold, it was usually necessary for the tenant to remove them before restoring the possession to the landlord; as he could not afterwards enter upon and remove that which had become part of the land, although, during his possession, he was not liable for such waste as would arise by such removal of what he had himself erected. If, however, the estate of the tenant was indeterminate, the property in the improvements was not divested by the lapse of the tenancy, and they might be removed afterwards. — *Bennett v. Nichols,* 12 *Mich. R.,* 22 ; *Ombony v. Jones,* 19 *N. Y.,* 234 ; *Taylor, Landl. and Ten.,* §552 ; *Van Ness v. Pacard,* 2 *Pet.,* 137 ; *Penton v. Robart,* 2 *East R.,* 88. And in *Holmes v. Tremper,* 20 *J. R.,* 29, it was held that if a tenant, after his term expired, entered upon the land and removed a cider mill, although he was liable in trespass for the entry, he was not liable in replevin for the property, because the property was not relinquished by his giving up possession of the land, unless such was his design. A similar rule was laid down in *Lawrence v. Kemp,* 1 *Duer R.,* 363.

There can be no dispute but that, in this country and in England, many cases have been decided, (and we are not disposed to question their propriety,) which hold that personal chattels, although severable without material injury to the freehold, may yet pass as realty if apparently suitable and actually designed to be permanently attached to the land. These cases are many of them founded upon the change of business, whereby motive power, which formerly depended on the freehold itself, by the improvement of water privileges, has now become dependent on steam engines, which are personal chattels. The doctrine that held all the machinery of a

water mill to be fixtures was based upon the idea that it was all designed to obtain the beneficial use of the realty. This principle cannot strictly apply to steam machinery, where everything is really dependent on that which is in its nature personal; and it is not surprising that in seeking to apply old rules to new circumstances, Courts should not have always been consistent. Mills and factories are generally set up as entireties for the purpose of grinding, sawing and manufacturing; and yet, according to the current of modern decisions, the ultimate purpose is disregarded; and while the steam engine, which is but an incident to the main purpose, and which is often removed and replaced without disturbing the rest, is presumed to be realty, the looms and other permanent machinery, for the accommodation of which the building was chiefly erected, are at the same time regarded as mere chattels. Such an arbitrary rule is unreasonable, and contrary to the general usage of business, and, if allowed to prevail over the actual agreements of parties, would work great injustice.

But we think that, with very few exceptions, the authorities agree that there is no inflexible rule on the subject, and that every presumption which might arise in the absence of an agreement may be defeated by the agreement. In *Wood v. Hewett,* 8 *Q. B.,* 913, the whole doctrine is put upon an intelligible and sensible basis. In that case, a fender, or water gate, was built in masonry upon the lands of a party, who removed it, and who was sued in trespass by the proprietor of a mill upon other lands, on the ground that it was his property. The defendant claimed that it was a part of his freehold. Lord *Denman* said: " The question is whether, because the fender in this case had been placed on the defendant's soil, it became his property as a necessary consequence of its position. I am of opinion *that such a consequence never follows of necessity where the chattel*

CRIPPEN *v.* MORRISON.

*is separable.*" * * " The decision in *Mant v. Collins* is so far an authority in point of law as it shows that, in a case of this kind, it is always open to inquiry how the article came to be in the place in which it is found, and what the parties intended as to its use; and the respective rights may be determined by the evidence on these points." * * " *The argument from the nature of the thing decides nothing.*" Patteson J. said: " The question does not turn upon any general doctrine of law, but upon the evidence in the case.    The general rule respecting annexations to the freehold is always open to variation by agreement of parties; and if a chattel of this kind is put up so that the owner can remove it, I do not see why it should necessarily become part of the freehold, or why it should not be removable when the owner thinks fit, if it appear to have been so agreed."    The case of *Mant v. Collins* decided that a pew door was not of necessity a part of the inheritance.    In *Waterfall v. Penistone,* 37 *Eng. L. & Eq.,* 156, where the owner of a mill mortgaged the mill, and some years afterwards made a second mortgage of the mill and other machinery since put up in it, to the same person, and subsequently made a transfer of machinery to another person, and became bankrupt, it was held the machinery did not pass by the real estate mortgages, and the bill of sale being ineffectual for non-compliance with statute regulations, the assignees in bankruptcy took the property as undisposed of.    It was machinery put up for trade purposes *by the land-owner,* and such as would have been presumed fixtures had not the party shown a different intent.

In *Mott v. Palmer,* 1 *N. Y. Rep.,* 564, it was held that rails built into a fence, with the understanding that they might be removed, did not pass to the vendee, although purchasing and taking possession without notice. And many cases are cited to show that ownership of

the soil by one is not incompatible with ownership of any erection upon it by another. In this case, also, the owner of the rails was allowed to recover against the purchaser of the land for converting them the year after he purchased. There seems to be no limitation concerning the kind of severable chattel which may be owned by one person upon another's land. See *Dame v. Dame,* 38 *N. H.,* 429; *Lancaster v. Eve,* 5 *C. B.* (*N. S.*), 717; *Duck v. Braddyll,* 13 *Price,* 455; *Trappes v. Harter,* 2 *C. & M.,* 153; *Rogers v. Woodbury,* 15 *Pick. R.,* 156; *Smith v. Benson,* 1 *Hill R.,* 176; *Russell v. Richards,* 1 *Fairf.,* 431; *Van Ness v. Pacard,* 2 *Pet.,* 137.

The case of *Ford v. Cobb,* 20 *N. Y.,* 344, in some of its principal features, resembles the case now before us. Salt kettles, and grates, and arch fronts were purchased to be set up in brick arches, and a chattel mortgage was given back reciting these facts, and was duly recorded. The land was then sold to a purchaser without notice. It was held that the kettles never became realty, and that the chattel mortgage title must prevail. The case of *Godard v. Gould,* 14 *Barb. S. C. R.,* 662, was entirely similar in principle.

There are cases in some States, particularly in Massachusetts, which are not consistent with these decisions. But when we consider the original common law doctrine, requiring an actual incorporation into the freehold, and the peculiar rules of policy which have since allowed articles which are personal in their nature to be annexed by construction, we think that rule is the safest which allows personalty to continue as such until changed by design into realty.

So long as a chattel may be removed as such from real estate, and is in a condition to be removed without material injury to the freehold, it is difficult to see by what process the title to it can be divested from its original owner without some sale or transfer, or some

acquiescence in the sale or transfer made by another, under circumstances going to create an estoppel. The cases in New York hold distinctly that the chattel does not cease to be a chattel, and does not therefore pass to a *bona fide* purchaser of the land. This is in accordance with the usual rule concerning separate chattels, a *bona fide* purchaser having no claim against the true owner. Whether this rule should be universal is not material in the case before us, for there has been no *bona fide* purchase, and therefore it is not necessary to express an opinion on it. The machinery was not put up when the original mortgage was given, and Crippen, when he first obtained his assignment from Morley, was informed there was no claim on the machinery. He could not divest himself of the force of this notice.

It is claimed, however, that, by the rules of law, fixtures made after a mortgage belong to the mortgagee, and that the mortgagor has not such an estate as will authorize any one to make an agreement with him touching the use of the land. Under the English rule, which gives the mortgagee an immediate right of possession, the mortgagor cannot give others a right he does not possess himself; and should he erect improvements which could not be severed without injury, they must undoubtedly continue on the premises. Improvements made by him would be *presumed* to be made for the benefit of the inheritance. But we think those cases which make this presumption absolute, not only as against him, but as against other owners of chattels placing them on the premises, go beyond reason, and divest property without any necessity or propriety, when its nature has not, in fact, been changed. — *Waterfall v. Penistone, supra.*

Neither do we consider the position of a mortgagor the same now as it was before the statutes forbidding possessory actions against him. Cases have been cited to

us which hold that this statute only takes away a remedy, but leaves the right of possession unimpaired in the mortgagee. With great respect for the tribunals so deciding, we cannot accept this interpretation. It destroys all the value of the provision, if it allows a right of entry against the will of the mortgagor. In *Mundy v. Munroe*, 1 *Mich. R.*, 68, it was held the statute was void as to former mortgagees; — a ruling which would have been out of place, had the law not reached something more than a mere remedy. This decision has been affirmed on numerous occasions since. In *Baker v. Pierson*, 5 *Mich. R.*, 456, it was held by this Court that a prior mortgagee, who, during a foreclosure suit of a subsequent mortgage, obtained possession from the mortgagor, could not retain possession after a sale on that foreclosure. To this opinion we adhere, as in accordance with the statute.

The mortgagor, therefore, until actual foreclosure, is in possession by right, and not by sufferance, and may make such arrangements for the use of the property as any other person could during his term. The machinery never became any part of the realty: Crippen was not misled by appearances, and had no right to dispose of it.

It is also objected that defendants in error are barred of their claims because they were parties to the foreclosure suit. But as they had mortgages on the real estate, they were proper defendants on that ground. We cannot presume the bill in that case was filed for any other purpose than a simple foreclosure. The ordinary allegations of a foreclosure suit would not authorize a decree declaring these chattels to belong to the realty. The decree, under ordinary circumstances, would simply allow the land to be sold, leaving all questions concerning its appurtenances to be disposed of as they should arise. To determine them in advance would require

CRIPPEN v. MORRISON.

special averments in the bill. — *Wurcherer v. Hewitt*, 10, *Mich. R.*, 453.

Judgment should be affirmed, with costs.

MARTIN Ch. J.:

Whatever may be the rule of the common law re-specting fixtures, in the absence of any agreement of parties, it is well settled at this day that the contract of parties will fix the character, and control the disposi-tion of personal property, which, in the absence of a contract, would be held to be a fixture; in other words, the parties interested may control the legal effect of any transaction respecting such property by express agreement. Such was done in the case before us. The property which is the subject of this litigation was only erected upon the premises upon the agreement that it should be subject to a chattel mortgage for its purchase price. By this the parties kept it separate from the realty, and it never became part of it. Such mortgage was given, and kept good up to the bringing of this suit, and all the evidence shows that all the parties through whose hands the property has been transmitted, knew of such original agreement, and of the existence of such mortgage; and, as I think, it shows further, that the land was purchased by all with this property excluded. Crippen certainly never purchased it, for he bought with full knowledge of the property, and the claims of the defendants in error to it. His ownership of the decree does not aid him, for he bought the decree with such knowledge, and could not hold it, or claim under it with any rights superior to those from whom he pur-chased. His purchase at the sale barely confirmed his title to the land, as he acquired it by purchase of the decree — nothing more.

The judgment of the Court below is affirmed, with costs.

CHRISTIANCY J. did not sit in this case.