CHARLES B. KNOWLTON AND DANIEL S. DYKEMAN V. WILLIAM D. JOHNSON.

*Trover for Fixtures.*

Trover for conversion will not lie against one who without notice has purchased real property, a part of which had been sold to the lessees of his vendor as personalty, with a stipulation that title should not pass until it was paid for, but which had been allowed to be made a part of the realty.   So *held* where a man bought a mill without notice that the water wheels were subject to such an arrangement.

Distinguished from *Crippen v. Morrison*, 13 Mich., 23, in the fact of notice.

Case made after judgment from St. Joseph.   Submitted June 6.   Decided June 12.

TROVER FOR CONVERSION.   The facts are stated in the opinion.

*Carpenter & Clarke* for plaintiffs urged that plaintiffs never parted with their title to the property, and that upon the refusal of the defendant to deliver it to them on demand, trover lay for its conversion, *Mott v. Palmer*, 1 N. Y., 564: *Ford v. Cobb*, 20 N. Y., 344; *Crippen v. Morrison*, 13 Mich., 23; *Godard v. Gould*, 14 Barb., 662; *Adams v. Lee*, 31 Mich., 442; *Tifft v. Horton*, 53 N. Y., 377. The stipulation that the fixture might be detached and removed if

not paid for was binding upon the contracting parties. Ewell on Fixtures, 68–9, 91–3.    Defendant's vendors having never had any title, could convey none to the defendant.  Story on Sales, §§ 188–201; *Couse v. Tregent*, 11 Mich., 65; *Johnston v. Whittemore*, 27 Mich., 463; *Whitney v. McConnell*, 29 Mich., 12; *Giddey v. Altman*, 27 Mich., 206.

*Jno. B. Shipman* for defendant.    Three tests are usually applied to determine whether personalty is merged in realty, viz: actual annexation to the realty or something appurtenant thereto; application to the use or purpose to which that part of the realty with which it is connected, is appropriated; the intention of the parties making the annexation (*Potter v. Cromwell*, 40 N. Y., 287; *Voorhees v. McGinnis*, 48 N. Y., 278; *Pierce v. George*, 108 Mass., 78), though the nature of the thing cannot be changed by stipulation.    *Rice v. Ruddiman*, 10 Mich., 125; *Ford v. Cobb*, 20 N. Y., 351.    Where the vendor of personalty intends it to be attached to the realty, he is estopped from claiming it as personalty after it is so attached, *Manley v. Saunders*, 27 Mich., 347; *Davis v. Bush*, 28 Mich., 432.    Latent equities cannot be claimed in the property by parties responsible for the purchaser's want of notice.    *Adams v. Bradley*, 12 Mich., 346; *Bloomer v. Henderson*, 8 Mich., 395; *Dawson v. Danbury Bank*, 15 Mich., 489; *Hull v. Swarthout*, 29 Mich., 252; *Treadway v. Sharon*, 7 Nev., 37; *Powers v. Dennison*, 30 Vt., 752; *Davenport v. Shants*, 43 Vt., 546; *Landon v. Platt*, 34 Conn., 517.

GRAVES, J.    This is a case made after judgment.

The plaintiffs sued in trover for certain water-wheels in use in defendant's grist-mill.    The court heard the evidence and made a special finding of facts and thereupon awarded judgment for the plaintiffs for $440.06 damages.    The defendant contends that the judgment for the plaintiffs is not warranted by the facts.

The principal matters found appear to be these:

On the first of October, 1874, Benjamin F. Trimmer

owned the mill. His son Edwin Trimmer, who was in partnership with one Thomas J. Staley, held a lease of it, and the firm were running it. The plaintiffs then bargained and delivered the wheels in question to the firm and with the express understanding that they were to be put in the mill and used there; as a part of the arrangement it was stipulated, however, on the part of the firm, that no property in the wheels should vest in them until acceptance and payment. The agreed price was $635, and no part of it has been paid.

The firm received the wheels and against objection by Benjamin Trimmer, the lessor, removed those already in and set up these in their stead.

They were attached to the building and the flume was built up around them in such manner as to prevent their being removed without injury to the building to the extent of from one to two hundred dollars.

After the wheels were so put in, the firm kept on running the mill until about March 11, 1875, at which time the lease was given up to the lessor, Benjamin Trimmer, and he shortly thereafter leased to one Lemuel Miller, who had been in the service of the firm, and Miller then ran the mill until it was sold to defendant.

On the 9th of August, 1875, Benjamin Trimmer sold and conveyed the mill to the defendant for $10,000, which the defendant paid. On this sale there was no reservation except of the old wheels, which were lying unused in the mill basement, and the defendant had no notice of any claim against or on account of the wheels. The defendant received possession of the mill, including the wheels, as grantee, and proceeded to use the property, and the plaintiffs in a short time thereafter required the defendant to pay for the wheels or surrender them. But the defendant insisted that he had bought the mill and the wheels and machinery connected with it without any notice of any claim on the part of the plaintiffs and that the title to the whole as real estate was vested in him, and that the plaintiffs were not entitled to claim the wheels as against him.

This action was then brought.

The circuit judge was of opinion that the stipulation by the firm to the plaintiffs that the title should not pass until payment of the purchase price, had the effect to preserve the right of property in the plaintiffs and prevent the wheels from ceasing to be considered as personal chattels, and that defendant, although a *bona fide* purchaser, could not hold against the plaintiffs who were the real owners, and he relied on *Crippen v. Morrison*, 13 Mich., 23, as sustaining this position.

That case is clearly distinguishable and is not pertinent to the question which is presented by the finding here. Crippen, who had become owner of the mill and who set up a claim to the machinery as being part of the realty, was not a purchaser without notice of the separate right to the machinery, and this circumstance was properly considered by the court as one of importance and was so mentioned. He was not a *bona fide* purchaser, and was not led by the course of the parties claiming the machinery to suppose that it was in fact a portion of the real estate and grantable accordingly.

Here, however, it is found expressly that the plaintiffs actually contemplated that the wheels should be incorporated with the building, and furnished them to Staley and young Trimmer with the design that they should be annexed as they were annexed, that is, so perfectly and firmly that they would work properly and afford and convey the power necessary for the running of the mill. And it is likewise found that Johnson bought after the wheels had been so put in and when they appeared to be as much a part of the realty as the building itself, and that he had no notice of any outside interest or claim.

Now, as between the plaintiffs and Staley and Trimmer, or between the plaintiffs and Benjamin Trimmer, or between them and any other person taking with notice of the right secured by the agreement, it may be admitted that the plaintiffs would be entitled to say that they had never parted with their property in the wheels and had ex-

pressly stipulated for the right to reclaim them in case of non-payment and were therefore entitled to pursue them and sue for their conversion as personal chattels, and still it does not follow by any means that the same position can be taken as against the defendant. So far from it, the circumstances enable him to insist that the private arrangements by the plaintiffs, by which the wheel were made to appear as *realty* and *the property of Benjamin Trimmer* and *to be grantable by the latter as a part of the mill,* cannot now, after his purchase on the faith of the appearances and without notice that they were in any respect deceptive, be set up to show that the wheels after all belonged to them and were not in fact a part of the mill, but were removable at their instance.

The plaintiffs deliberately agreed that the water-wheels should be converted in all outward appearance into real property, and they thereby put it in the power of Trimmer to make sale of the wheels as part of the mill. He sold accordingly. The defendant purchased. He acted in good faith and was guilty of no want of care. When the plaintiffs allowed the wheels to be worked into the mill they assumed risks, and among them such a result as has occurred, and it would be contrary to justice to allow them to save themselves by casting the consequences upon the defendant. The principle is clear, and the authorities in support of it are numerous. Many of them are collected in the brief of defendant's counsel.

The judgment should be reversed and one entered here for defendant, with the costs of both courts.

The other Justices concurred.