## BRAND v. McMahon.

*(Supreme Court, General Term, Fifth Department. June, 1891.)*

FIXTURES—RESERVATION OF TITLE BY SELLER.

Defendant sold certain machinery to a person who placed it on his mortgaged
premises, affixing it to the freehold, under an agreement that the same should not
become a part of the realty, but should retain its character as personal property,
and that title thereto should remain in defendant until he should be paid the pur-
chase price thereof in full. Defendant went on the premises, and removed the ma-
chinery, after foreclosure of the mortgage. *Held*, in an action by the purchaser at
the foreclosure sale for wrongful taking and conversion, that plaintiff acquired no
title to the machinery as against defendant.

Exceptions from circuit court, Cattaraugus county.

Action by George P. Brand against James W. McMahon. Verdict was di-
rected for defendant, and exceptions ordered to be heard in the first instance
at general term.

Argued before DWIGHT, P. J., and MACOMBER, J.

*E. C. Sprague,* for plaintiff.    *W. G. Laidlaw,* for defendant.

DWIGHT, P. J. The action was trover for the wrongful taking and con-
version of a quantity of the machinery of a steam saw-mill, which was claimed
by the plaintiff as the purchaser, on mortgage foreclosure, of the freehold
which included the mill; and by the defendant as the personal representative
of the owner of the machinery, as personal property. In February, 1887,
one Bacon was the owner of a small tract of land on which there was a saw-
mill run by water, and the property was subject to the lien of several mort-
gages, the latest of which was one of $1,000, under which the plaintiff took
his title. At that time Bacon negotiated with one John McMahon—the fa-
ther of the defendant, since deceased—for the purchase of the machinery, in-
cluding boiler and engine, of a steam saw-mill, owned by the latter, which
resulted in the delivery of possession of the machinery to the former. Bacon
thereupon proceeded to take out a portion of the machinery already in his
mill, and replaced it by the steam machinery thus procured from McMahon,
which he attached to the freehold in a substantial manner. In 1888 the
mortgage of $1,000 was foreclosed, and the plaintiff became the purchaser on
the sale, shortly after which the defendant, representing the estate of his fa-

ther, who had died in the mean time, went onto the premises, and removed therefrom the machinery in question. This was the alleged conversion for which this action was brought. The testimony of Bacon and the defendant, in respect to the negotiations under which the former obtained possession of the machinery, was to the effect that it was agreed between him and John McMahon that the title to the property should remain in the latter until it was paid for, and that it should retain the character of personal property, and not become part of the realty. This testimony was not contradicted by any direct evidence, and was countervailed, if at all, only by evidence of what subsequently took place between the parties. The proof shows that in the latter part of July, after Bacon put the new machinery into his mill, John McMahon was attacked with paralysis, and his son, the defendant, not expecting him to live, sent for Bacon, and procured him to execute to his father four notes of $275 each, for the price which had been put on the machinery, and a chattel mortgage on the engine and boilers to secure the notes. The notes were dated July 1, 1887, and were made payable in one, two, three, and four years, respectively. Bacon also executed at the same time what was called a "bill of sale" of the same property, which was, in effect, another chattel mortgage. It purported to transfer the engine and boiler to McMahon, "to have and to hold until said McMahon is paid in full for said mill, which will be upon payment of note for $275, due July 1st, 1891." The defendant's account of this transaction was as follows: "I showed him father's condition, as he could see himself; and I told him there was nothing to show anything about the mill. If he [Bacon] would happen to die, or claim the property, we had nothing to show that it was ours; and I sat down and drew a chattel mortgage, and bill of sale, and drew up the notes," etc. It also appeared without dispute that, at the time of the foreclosure sale, the auctioneer made public announcement of the claim of McMahon to the machinery, and of the ground of that claim. There were no facts in dispute in the case, unless the conclusion of fact, to be drawn from the evidence above referred to, as to what was the agreement between the parties under which Bacon took possession of the machinery and put it into his mill, and that question was submitted to the jury. Upon that subject the court instructed the jury very clearly that if, under the agreement between the parties, Bacon purchased the machinery and took title to it, although on credit, before he put it into his mill, and the notes and chattel mortgages were given as evidence of and security for an indebtedness thus created, then the machinery became a part of the real estate, and was covered by the mortgage, and passed to the purchaser under the foreclosure sale; but that if, on the other hand, they came to the conclusion that the arrangement was made between McMahon and Bacon, as testified to by the defendant and Bacon; that McMahon permitted Bacon to take the property upon an agreed valuation of $1,000, and put it into his mill, as he did, under the further agreement that the property should not become a part of the realty, but that it should retain its character as personal property, and that title to it should remain in McMahon down to the time he was paid his $1,000; and that these chattel mortgages were executed in pursuance of that agreement,—then the defendant was entitled to a verdict. The exceptions of the plaintiff to these instructions raised the only real question which is presented by this appeal. We think the charge was in harmony with the doctrine of the well-known cases of *Mott* v. *Palmer*, 1 N. Y. 564; *Tifft* v. *Horton*, 53 N. Y. 377; and *Tyson* v. *Post*, 108 N. Y. 217, 15 N. E. Rep. 316. The language of the court in *Tifft* v. *Horton* is particularly applicable to this case, where it is said, at page 381, that neither prior nor subsequent mortgagee could claim personal property affixed to the freehold, as subject to the lien of the mortgage, "where, by the express agreement of the owner of the fee and the owner of the chattel, its character as personal property was not to be changed, but was to continue, and be subject to the right of removal by

the owner of the chattels on failure of performance of conditions." The question of fact—or of the inference to be drawn from the facts—as to the real character of the agreement under which this machinery was affixed to the freehold was, as we have seen, submitted to the jury, and the fact was found in favor of the defendant. Under the doctrine of the cases above cited, we think that finding entitled the defendant to a dismissal of the complaint. The motion for a new trial must be denied, and judgment ordered for the defendant on the verdict.