| 91 | 409 |
| 111 | 418 |

## THE LANSING IRON & ENGINE WORKS v. JAMES WALKER.

91      409|
s51NW1061|
s30ASR488n|
130      441

*Conditional sale—Fixtures.*

The owner of an undivided interest in a farm purchased a portable saw-mill. The vendor retained the title and right of possession until the mill was paid for, but gave the vendee permission to take and use the mill in the township where his farm was situated, and in adjacent townships, so long as he took reasonable care of it, and was not in default in any of the payments provided for in the contract. The vendee made the first payment, and set up the mill on his farm, the boiler being bricked in and arched up, and the engine set upon brick-work and bolted to the foundation, and both being roofed over, while the saw-mill and carriage were uncovered. He afterwards conveyed the farm by quitclaim deed, and in an action of trover, brought by the vendor against the grantee on refusal to pay the remainder of the purchase price, a verdict was directed in favor of the plaintiff, which is

affirmed; the case being ruled by *Adams v. Lee*, 31 Mich. 440, and *Robertson v. Corsett*, 39 Id. 777.

Error to Jackson. (Peck, J.) Submitted on briefs April 7, 1892. Decided April 22, 1892.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Thomas E. Barkworth,* for appellant.

*Cahill & Ostrander,* for plaintiff.

McGRATH, J. In November, 1886, plaintiff and one Myers entered into a written contract, by the terms of which plaintiff agreed to sell to Myers—

"One stationary Standard sawing rig complete, which includes one 30-horse-power engine, 10x16; No. 5 boiler, with throttling or automatic governor, whichever is considered best, with all boiler fixtures; Standard mill complete, with 54-inch planer, saw, belting, pipes, and connections, etc.; and one picket mill, with 36-inch solid saw, with friction feed, etc., rigged for cutting pickets, $\frac{1}{2}$ in. and up, with proper shafting and pulleys, to run with or without the above Standard saw-mill. Said machinery to be ready for delivery at the Lansing Iron Works, Lansing, Mich., on or about the 28th day of November, 1886. * * * It is further agreed that the title and right of possession of the aforesaid machinery shall remain in the above first party until the price is paid in full, according to the notes accompanying this contract, when the same shall vest in the party of the second part. But it is also agreed that the second party may take said machinery, when completed and delivered, and run the same in the township of Sandstone, county of Jackson, and in adjacent townships, and retain and use it so long as he takes reasonable care of the same, and is not in default in any of his payments as herein provided."

Payments were to be made under said contract, $150 on or before the delivery of the machinery, $350 on or

before June 1, 1887, and the balance in two annual payments.

Myers paid the $150, and the machinery was delivered to him. He owned an undivided interest in a farm in the township of Sandstone, to which he removed the machinery, and set it up. The boiler was bricked in and arched up, and the engine was set upon brick-work, and bolted down to the foundation. The boiler and engine were covered over,—a part with a board roof, and a part with a shingled roof. The saw-mill and carriage were uncovered. In February, 1888, Myers conveyed the farm by quitclaim deed to the defendant, and trover is brought by reason of the refusal to pay the balance due plaintiff, under the agreement between plaintiff and Myers. The court directed a verdict for plaintiff for the amount of the balance, and defendant appeals.

Defendant contends that the case should have been submitted to the jury upon the question of fact raised by the testimony as to whether the purchase made by defendant from Myers was one made in good faith for a valuable consideration, and without notice of any claim of the plaintiff against the property purchased.

The case is ruled by *Adams v. Lee,* 31 Mich. 440, and *Robertson v. Corsett,* 39 Id. 777.

In *Adams v. Lee,* the Court say:

" All the time, therefore, the parties have had title to the machinery distinct from their title to the land, and this fact of itself is conclusive that the former was personalty; for to constitute a fixture there must not only be physical annexation in some form to the realty, but there must be unity of title, so that a conveyance of the realty would of necessity convey the fixture also. When the ownership of the land is in one person, and of the thing affixed to it is in another, and in its nature is capable of severance without injury to the former, the latter cannot, in contemplation of law, become a part of the former, but must necessarily remain distinct property,

to be used and dealt with as personal estate only. And the fact that the owner of the thing affixed to the freehold has also an undivided interest in the latter, cannot render the former a fixture when the interests are different in extent. A thing cannot, as to an undivided interest therein, be real estate, and as to another undivided interest be personalty. It must be the one thing or the other. And the position which is taken by Lee in this case involves this absurdity: that Kaufman, at the time when he and Kinney were severally the owners of an undivided half of the land, might have sold that, and, as a necessary consequence, transferred an · undivided one-half of the machinery also, though the whole of the machinery belonged to Kinney as exclusive owner. This would be the necessary result if the machinery was real estate, for there could be no such ·a thing as attaching it to an undivided interest in the land only."

In *Morrison v. Berry*, 42 Mich. 389, the ownership of the land and of the thing affixed was in one and the same person. It was there held that the annexation of the thing to the freehold was not the wrongful act of the land-owner, but that, by act and intervention of the claimant, the article became a part of the freehold.

In *Knowlton v. Johnson*, 37 Mich. 47, T. owned the land and mill. S. was the lessee. The water-wheels were a part of the structure. Plaintiffs furnished the water-wheels to S., with the understanding that they were to be put in the mill, and there used; and, against the objection of T., the old wheels were taken out and the new put in. Six months afterwards S. surrendered his lease, and T. leased to M. T. finally sold the mill property to defendant, and plaintiffs brought trover. The Court say:

"The plaintiffs deliberately agreed that the water-wheels should be converted in all outward appearance into real property, and they thereby put it in the power of Trimmer to make sale of the wheels as part of the mill."

In the present case the contract of sale provided for

the use of the machinery, not only in the township of Sandstone, but in adjoining townships. Myers was not the sole owner of the land upon which it was placed, but he was sole owner of the interest in the machinery, and operated it solely in his own behalf. The structure covering the boiler and engine was but a temporary one. The machinery in question did not consist simply of a pulley, shaft, or wheel which was to be attached to other machinery already a part of a saw-mill, and, as such, a part of the realty, but it was a complete outfit, designed by the agreement to be portable. There was nothing done by plaintiff indicative of an intent to permit the machinery to be so annexed to realty as to change its character. The state of the title to the realty, and the conduct of Myers regarding the machinery, negatived any intent on his part to allow his interest in the machinery to be absorbed by the owners of the realty, or to permit it to be merged. The circumstances of the purchase by defendant clearly indicate that he took the entire interest in this machinery, while he took but an undivided interest in the realty. He afterwards operated the machinery as sole owner.

It was held in *Wheeler v. Bedell*, 40 Mich. 693, 696, that there is no universal test by which the character of what is claimed to be a fixture can be determined in the abstract; neither the mode of annexation nor the manner of use is in all cases conclusive. It must usually depend on the express or implied understanding of the parties concerned.

In *Coleman v. Manufacturing Co.*, 38 Mich. 30, 40, the Court, commenting upon a line of authorities which seem to regard the manner of the attachment to the realty as the test, say:

"This, however, is a very extreme view, and is hardly compatible with the tenor of our own previous decisions.

It seems to overlook or ignore one test, and frequently the most important test, namely, the intent of the party making the annexation."

See, also, *Manwaring v. Jenison*, 61 Mich. 117.

The judgment is affirmed.

The other Justices concurred.