## J. WILSON McCRILLIS vs. JOHN W. COLE.

### PROVIDENCE—APRIL 27, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Fixtures.   Conditional Sales.*

A. built a mill on land belonging to him, under an agreement with B. by which B. was to have the right to purchase land and mill within ten years, paying each year, as rental, interest on the price of the land and the money expended by A., together with a certain amount on account of the purchase price.   B. was to furnish an engine and boiler without

cost to A., "to be considered a part of the real estate." B. bought the engine of C. under an agreement by which it was to remain the property of C. until paid for, with the right in C. to remove it if payment should not be made. The agreement between A. and B. was unknown to C., and A. was ignorant of the agreement between B. and C. After default by B., on the question of the right of C. in the engine:—

*Held*, that, as to B., A. stood equitably as a mortgagee.

*Held*, further, that, under the well-settled doctrine in this State, as between A. and B. the engine was a fixture.

*Held*, further, that, as between A. and C., C. was at fault in intrusting B. with possession of that which was liable to become realty, without making suitable inquiry.

*Held*, further, that the title of A. was paramount to that of C.

BILL IN EQUITY. Heard on bill, answer, and proof.

STINESS, C. J. The complainant McCrillis entered into a contract by which he was to build a mill for Smith, and to sell to him the land and mill at an agreed price. Smith agreed to buy the land and mill within ten years, paying, after two years, $500 a year on account of the purchase price, and paying as rental, until the purchase was completed, interest on the price of the land and the money expended by the complainant in erecting the mill. Smith also agreed to furnish a part of the material for the mill and $600 in cash, labor, or materials, without cost to McCrillis, and to furnish an engine and boiler, with shafting and pulleys, without cost to the complainant, "to be considered a part of the real estate." McCrillis built the mill, and Smith furnished the engine and placed it in the mill on a foundation built by McCrillis. Smith bought the engine of the respondent Cole, giving a receipt therefor stating that the engine was "borrowed and received" of Cole, "the same to remain the property of said John W. Cole until such time as the price set against them shall be paid as per memorandum in the margin, when they are to become the property of the borrower, E. E. Smith & Company."

Smith was doing business under the above firm name.

Smith further agreed with Cole "in the meantime to keep property in good repair and sufficiently insured for the benefit of the said John W. Cole, and to permit him to enter and remove the same," if payment should not be made as agreed.

The agreement between Smith and McCrillis was unknown to Cole, and McCrillis was ignorant of the agreement between Smith and Cole.

Smith became bankrupt, and, upon Cole's threat to take the engine the complainant brings this bill for an injunction against its removal.

The complainant claims that the engine became a part of the real estate, and that the respondent has no right to remove it.

This is the controlling question in the case.

The complainant's first point is that by the agreement between him and Smith the engine was to be a fixture.

Undoubtedly, as between themselves, landlord and tenant and vendor and vendee may say whether a thing shall be regarded as a fixture or not; but such an agreement cannot bind other parties having rights in the property. The effect of the agreement, therefore, between McCrillis and Smith is not controlling as to Cole who was not a party to it. *Kaestner* v. *Day*, 65 Ill. App. 623.

The question then is whether the agreement between Cole and Smith was such as to make the engine a fixture, so that title passed to McCrillis when the engine was placed in the mill.

(1) The complainant argues that he cannot be bound by a secret agreement between Smith and a third party, as it would work a fraud upon him. This depends upon the question whether the engine did or did not become a fixture as between the parties. If it did, the complainant holds it. If it did not, it was a chattel, and the rule of *caveat emptor* applies to the complainant if he is to be regarded as a purchaser under his agreement with Smith.

The general rule in regard to fixtures, as now established, was so fully considered by Mr. Justice Tillinghast in *Canning* v. *Owen*, 22 R. I. 624, that it is needless to review it. The opinion in that case clearly pointed out the distinction in applying the rule between landlord and tenant, and vendor and vendee, the former being broader and more liberal than the latter. Thus, he cited from *McConnell* v. *Blood*, 123 Mass. 47, as follows: "Many things which, as between landlord and tenant,

would be removable as chattels, are regarded as a part of the realty in favor of a mortgagee."

In this case the relation of the parties is not clear. McCrillis did not sell and Smith did not buy. They were not actually vendor and vendee. While Smith was to pay a rental, pending his agreement to buy, the sum he was to pay was interest on the price of the land and money expended in building, not a sum based on the rental value of the property. From this fact, coupled with the agreement to buy under which Smith entered, we are of opinion that they did not stand strictly in the relation of landlord and tenant. The obvious effect of the agreement between McCrillis and Smith, under which McCrillis was to advance his money, was that the contributions of Smith would be security to him for money he should expend in erecting the mill for Smith's benefit and on his agreement.

We therefore think that as to Smith he stood, equitably, as a mortgagee. The general rule between vendor and vendee is substantially the same between mortgagor and mortgagee, because the relation is substantially the same; the mortgage being a form of sale. A mortgagee gets a conditional instead of an absolute title, but it becomes absolute on default. In this case a mortgage was not given, but McCrillis held the title to the property conditionally, and, upon default, held it absolutely, without the need of a sale or deed.

As to the rule between vendor and vendee, it was said in *Canning* v. *Owen*, quoting Field, J., in *Sands* v. *Pfeiffer*, 10 Cal. 264: "'As against him' (the vendor) 'all fixtures pass to his vendee, even though erected for the purposes of trade and manufacture, or for ornament or domestic use, unless specially reserved in the conveyance.' And the same strict rule which applies between heir and executor applies equally between vendor and vendee, and between mortgagor and mortgagee. 2 Kent's Com., * 345."

Under this relation of Smith and McCrillis there can be no question that if Smith had put in the engine, with clear title in himself, McCrillis would have taken it, by the agreement between them, upon Smith's default.

What effect, then, is to be given to Cole's claim of title,

under the circumstances? Has he title as against the complainant under an agreement in the nature of a mortgage?

Upon equitable grounds the complainant has the stronger position.

Under his contract he retained the title to the land, giving Smith no apparent ownership, as security for his expenditure in building the mill, upon the chance that it might be left on his hands, the parties agreeing that the engine and boiler should be considered as real estate. He could have done no more. The agreement, as between him and Smith, was valid and reasonable. He was taking a large chance, for which he was entitled to adequate security.

Cole, on the other hand, was selling chattels of no use unless affixed to land, knowing the use to which they were to be put, without inquiry as to the ownership of the mill.

There is some conflict of testimony as to his knowledge, but it is not material. If he demanded, or was shown, any evidence of Smith's ownership of the mill, there could be none except the agreement, which showed at once that McCrillis was to hold the property as real estate. If he made no inquiry, then he knew that the engine and boilers were liable to be put into another's mill, where ownership was liable to be brought in question. He was intrusting Smith with possession and apparent ownership of that which was liable to become realty. If we ask which of two innocent persons must suffer loss, the answer is obvious that it must be the one more at fault; and these facts show that the defendant was at fault in not making an inquiry which it was his duty to make.

This is the underlying principle upon which decisions upon this point rest, and we think that the law is settled on sound reason and a decided weight of authority.

In the first place we consider it settled in this State, by *Canning* v. *Owen, supra*, that whatever is attached to the realty with a view to enhance the value thereof, and for the purpose of being permanently used in connection therewith, is a fixture; and the fact that it can be removed without physical injury to the freehold does not change its character.

In support of this rule, in addition to the cases there cited,

we refer to the following as a few of the many cases on this fruitful subject. *Pierce* v. *George,* 108 Mass. 78; machinery other than that clearly portable. *Smith* v. *Servin,* 130 Mass. 511; iron table on brick foundation. *Sweetzer* v. *Jones,* 35 Vt. 317; boilers and engine. *Snedeker* v. *Warring,* 12 N. Y. (2 Ker.) 170; ornamental statue in grounds. *Hopewell* v. *Taunton,* 150 Mass. 519; machinery in a cotton mill. *Vail* v. *Weaver,* 132 Pa. St. 363; engine and machinery of electric plant.

In the present case the intention of the contract was to make the engine and boilers a part of the realty.

The question still remains, however, whether this affects the right of the respondent Cole, who was not a party to the contract in regard to the erection of the mill.

As to this question, in *Davenport* v. *Shants,* 43 Vt. 546, the rule is well stated in the syllabus and sustained by the opinion as follows: " When a person sells machinery under a condition that it shall remain the property of the vendor until the price is paid, but it is of such a character that when it is put in place in a mill it would pass under a mortgage of the real estate, and the vendor had reason to suppose it would be, and it was, so placed before it was paid for: *held,* that the equity of a subsequent mortgagee, without notice of the vendor's claim and in reliance upon the vendee's title being absolute, is paramount to that of the conditional vendor."

This doctrine is sustained as to subsequent mortgagees or purchasers by the following cases: *Wentworth* v. *Woods,* 163 Mass. 28; *Ridgeway* v. *Way,* 141 Mass. 557; *Southbridge* v. *Exeter,* 127 Mass. 542; *Meagher* v. *Hayes,* 152 Mass. 228; *Kaestner* v. *Day,* 65 Ill. App. 623; *Fryatt* v. *The Sullivan Co.,* 5 Hill (N. Y.), 116; affirmed, 7 Hill, 529; *Thomson* v. *Smith,* 111 Ia. 718; *Stillman* v. *Flenniken,* 58 Ia 450; *Water Co.* v. *Boiler Works,* 15 Tex. Cir. App. 694; *Brown* v. *Roland,* 11 Tex. Cir. App. 648; *Wickes* v. *Hill,* 115 Mich. 333; *McNally* v. *Connolly,* 70 Cal. 3; *Miller* v. *Waddingham,* 91 Cal. 377; *Knowlton* v. *Johnson,* 37 Mich. 47; *Muir* v. *Jones,* 23 Ore. 332; *Wade* v. *Donau,* 10 Wash. 285; *Case* v. *Garvan,* 45 Ohio St. 289.

The following cases apply the same rule to prior mortgagees and owners: *Thompson* v. *Vinton,* 121 Mass. 139; *Hunt* v. *Bay State,* 97 Mass. 279; *English* v. *Foote,* 8 Sm. & Mar. (16 Miss.) 444; *Hinkley* v. *Black,* 70 Me. 473; *Roddy* v. *Brick,* 42 N. J. Eq. 218; *The Bass Foundry* v. *Gallentine,* 99 Ind. 525; *Hamilton* v. *Huntley,* 78 Ind. 521.

We do not regard a distinction between prior and subsequent mortgagees as important in this case. Both classes are recognized as being within the rule; and the fact that the mortgage was subsequent to the delivery of the property claimed in the cases cited was, no doubt, in some of them accidental. The language of some of the opinions indicates that the result would have been the same had the mortgages been prior to the conditional sale of the chattel. However this may be, it is clear that there is a stronger equity in favor of a *bona fide* purchaser, without notice, who is presumed to buy on the basis of what he sees and of what would be regarded to pass as real estate. He pays upon the condition of the property as it appears. To a prior mortgagee or owner in many cases it would simply be an accession.

In this case the complainant put out his money on the agreement by Smith to furnish the engine and boilers. His money was as much advanced upon the understanding that the engine and boilers were to be a part of the realty as one who should buy the realty as it stood.

Without reviewing all the cases cited by the respondent, it is enough to say that many of them are cases between landlord and tenant, and others are not in harmony with later decisions of the same court cited above; *e. g., The Lansing Works* v. *Walker,* 91 Mich. 409; *Penn* v. *Semple,* 38 N. J. Eq. 575; *Hendy* v. *Dinkerhoff,* 57 Cal. 3; *March* v. *McKoy,* 56 Cal. 85; *Godard* v. *Gould,* 14 Barb. 662.

Other cases cited by respondent may be distinguished. In *Brand* v. *McMahon,* 15 N. Y. Supp. 39, the claim of the vendor to the machinery was announced by the auctioneer at the sale of the realty.

In *New Chester* v. *Holly,* 53 Fed. Rep. 19, the appellant water company was composed of the members of a firm which

had bought the engines of the Holly company and then conveyed the land on which the engines were placed to the water company. On this fact the water company was charged with notice.

In other cases, the mortgagor or grantor having agreed that the property should be personalty, it has been held that his grantee was estopped to claim to the contrary; *e. g., Smith* v. *Benson*, 1 Hill, 176.

Our conclusion is that the complainant is entitled to hold the engine and boilers.

*Littlefield & Barrows*, for complainant.

*Edwards & Angell*, for respondent.