JOHN A. ROBERTSON v. CHARLES S. CORSETT, GEORGE BAKER ET AL.

MARY LEONARD v. NETTIE L. WILLIAMS, GEORGE BAKER ET AL.

*Fixtures—Machinery—Mortgages on premises where the land and machinery placed upon it are used by a partnership and held by different titles.*

A saw-mill and its appointments are *prima facie* part of the realty and should be so treated if no agreement, understanding or intent is shown to change their character.

Machinery not made expressly for use in the building in which it is placed, but capable of beneficial use if removed or set up in some other building, is personalty or realty according to the intent or understanding fairly deducible from the circumstances.

39 MICH.—98.

Where real estate is owned in undivided interests by the individuals who compose a partnership which has only the use of it, trade fixtures set up by the partners do not become realty, and when their occupation ceases the partners may remove them. They are not covered by mortgages on the premises if their owners did not plainly mean them to be so.

Machinery bought as partnership property and constituting part of its stock in business is liable to the payment of partnership debts and subject to the adjustment of balances as between the partners; but if it is annexed by the partners to lands also held as partnership property it may become a part of the realty.

Where land and machinery put upon it are held by different titles, and a steam engine is afterwards put in to run the machinery, the engine partakes of the character of the machinery, and does not become part of the realty.

Appeals from Barry. Submitted October 30. Decided November 22.

FORECLOSURES.  Defendants appeal.

*John C. FitzGerald* for complainants. The test of a fixture is not whether it is so attached that its removal will injure the realty or the building in which it is placed, but whether it is put up for permanent use and is connected with the building and necessary to the business being carried on therein, *Quinby v. Manhattan Cloth & Paper Co.*, 24 N. J. Ch., 260; all articles of machinery placed in a mill by the owner and mortgager, that are useful in the operation of the mill and necessary to complete it, are permanent fixtures as between mortgager and mortgagee, and are hence covered by the mortgage, though not actually fastened to the mill, *Winslow v. Merch. Ins. Co.*, 4 Met., 306; *Farrar v. Stackpole*, 6 Greenl., 154; *Overton v. Williston*, 31 Penn. St., 155; *Corliss v. McLagin*, 29 Me., 115; *Morgan v. Arthurs*, 3 Watts, 140; *Noble v. Bosworth*, 19 Pick., 315; *Voorhis v. Freeman*, 2 W. & S., 116; *House v. House*, 10 Paige, 159; *Coleman v. Stearns Mfg. Co.*, 38 Mich., 30; *McAuliffe v. Mann*, 37 Mich., 539; *O'Brien v. Kusterer*, 27 Mich., 289; *Jones v. Detroit Chair Co.*, 38 Mich., 92; and the slightest annexation is enough, *Burnside v. Twitchell*, 43

N. H., 393; machinery placed in a saw-mill after a mortgage upon it has been given, becomes part of the mortgage security, *Roberts v. Dauphin Deposite Bank,* 19 Penn. St., 71; *Butler v. Page,* 7 Met., 40; *Walmsley v. Milne,* 97 E. C. L., 114; *Bowen v. Wood,* 35 Ind., 268; *Frankland v. Moulton,* 5 Wis., 1; *Daniels v. Bowe,* 25 Ia., 403; *U. S. v. New Orleans R. R.,* 12 Wall., 362; Jones on Mortgages, § 445; when one sells machinery with the condition that title shall remain in him until it is paid for and allows it to be put up in a mill by the vendee as part of the mill machinery, and the vendee afterwards mortgages or sells the real estate to an innocent purchaser, the mortgagee or vendee will hold the machinery as against the conditional vendor, who will be estopped from denying that it is part of the realty, *Knowlton v. Johnson,* 37 Mich., 47; *Powers v. Dennison,* 30 Vt., 752; *Fryatt v. Sullivan Co.,* 5 Hill, 116: 7 Hill, 529; *Brennan v. Whitaker,* 15 Ohio St., 446; *Crippen v. Morrison,* 13 Mich., 24; *Preston v. Briggs,* 16 Vt., 124; the machinery in this case should be considered as realty and covered by the mortgages, in view of the manifest intention of the parties, the object of the mills and the use to which the mills and machinery were put, and the mode of attaching it, *McRea v. Cent. Nat. Bank,* 66 N. Y., 489; *Sparks v. State Bank,* 7 Blackf., 469; *Oves v. Ogelsby,* 7 Watts, 106; *Trull v. Fuller,* 28 Me., 545; *Pierce v. George,* 108 Mass., 78; *Longbottom v. Berry,* L. R. 5 Q. B., 123; 1 Jones on Mortgages, § 429.

*Sweezey & Knappen* for defendant Baker. Machinery supported on posts fastened to the floor by wood screws, and removable without injury to itself or to the building was held to be personalty in a case where the building was mortgaged with all the machinery belonging to it, *Swift v. Thompson,* 9 Conn., 67; looms in a woolen factory and other machinery attached only by cleats or other means to keep it in place are chattels, *Mur-*

*dock v. Gifford*, 18 N. Y., 28; *Teaff v. Hewitt*, 1 Ohio St., 511; *Gale v. Ward*, 14 Mass., 352; *Sturgis v. Warren*, 11 Vt., 433; when a factory is mortgaged with its appurtenances, but remains in possession, the machinery that can be easily disconnected from the freehold and used for similar purposes in any other building does not pass on foreclosure, but may be attached as the mortgager's chattels, *McLaughlin v. Nash*, 14 Allen, 136.

COOLEY, J. The bill in each of these cases was filed to foreclose a mortgage on the undivided half of certain lands. The controversy is the same in each, and concerns the right to certain fixtures, which are claimed by complainants as a part of the real estate, but have been removed by the defendant George Baker, as personalty.

The land consists of about two acres, with saw-mill upon it. In 1866 the land was owned by Charles S. Corsett and one Miles, and a carding machine was then put in. Some time in 1871, Miles sold his undivided half of the premises to Stephen W. Walrath, and Walrath by arrangement with Corsett put a planing and matching machine into a small building erected for the purpose. The machine was a large one, weighing some 3500 pounds, and was fastened to the floor with bolts. The saw-mill had an upright saw, with suitable gearing and shafting and was run by water power. When the planer and matcher was put in, Corsett and Walrath entered into partnership to operate the machinery on the premises, and Corsett under the arrangement was to be owner of one-half the planer and matcher. On December 20, 1871, Walrath conveyed his undivided half to Nettie L. Williams, and took back a purchase money mortgage, which is the same mortgage being foreclosed in the second of these suits. The land in this deed and mortgage is simply described by metes and bounds, and nothing is said of buildings or fixtures. When Nettie L. Williams purchased, a new partnership was formed under the name of Corsett, Williams & Co., composed of Charles

S. Corsett, Charles B. Williams, husband of Nettie L.
Williams, and Mrs. Williams, for the purpose of running
the saw-mill and other machinery on the premises. In
May, 1872, Charles S. Corsett mortgaged his undivided
half of the premises to John A. Robertson to secure the
payment of money borrowed. This mortgage also
described the land by metes and bounds, adding to the
description the words "together with the mill." This
is the mortgage which is being foreclosed in the first
suit. After this mortgage was given, the firm of Corsett,
Williams & Co. or Corsett for them, purchased and set
up on the premises a moulding machine, a tenoning
machine, a morticing machine, a blind slat tenoning
machine, a blind wiring machine, and other similar
machinery, which the firm from that time made use of
in their business. Some of these were fastened to the
floor by bolts or braces, and others were not fastened
at all. The firm of Corsett, Williams & Co. also added
to their power by renting and placing in the mill an
engine and boiler, and in September, 1872, these were
removed, and an engine and boiler purchased by Mrs.
Williams were substituted.

August 1, 1875, a new copartnership was formed, con-
sisting of Charles S. Corsett, Charles B. Williams and
George Baker, to carry on business on the same premises,
and by means of the machinery already enumerated.
It was understood that Williams and Corsett put into the
copartnership the use of the real estate and machinery,
though what right Williams had to put in what belonged
to his wife does not distinctly appear.

Baker put in a thousand dollars in money. At the
same time, to secure Baker for any liability he might
incur on behalf of the firm, or any moneys he might pay
for the other partners, Williams and Corsett executed to
him a bill of sale of the planer and matcher, the tenon-
ing machine, the moulding machine, and several articles
which need not be particularly enumerated. Corsett and
Mrs. Williams also severally conveyed to Baker undi-

vided halves of the real estate, in trust to secure him for any indebtedness he might pay for them. Soon after the last partnership was formed, the engine was removed from the premises and another substituted. In May, 1876, Baker sold out his interest in the copartnership to Charles B. Williams. At that time he claimed that $2027 was owing and secured to him by the bill of sale given to him by Corsett and Charles B. Williams and by the deeds of trust executed by Corsett and Mrs. Williams. At length, in February, 1877, Baker went upon the premises and proceeded to remove from the buildings the following articles, claiming all of them as personal property, the steam engine, planer and matcher, tenoning machine, moulding machine, upright shaping machine, scroll sawing machine, three saw tables and circular saws used thereon, blind slat tenoning machine, morticing machine, blind wiring machine, slab saw, upright mulay saw, all the line and counter shafting, pulleys and belts, water-wheel and gearing and shafting connected therewith.

The complainants in these bills claim all this machinery as constituting a part of the realty, and they have obtained decrees in the court below requiring it all to be restored to the premises from which Baker removed it. The facts above set forth constitute a part only of all the facts bearing upon the controversy, but we have chosen to omit all that could have no important influence upon the result.

I. We find in the record no ground whatever for claiming the right to remove from the premises the water-wheel and gearing and shafting connected therewith, so far as they constitute parts of the saw-mill proper, or the upright mulay saw, which we suppose also belongs to the saw-mill. The saw-mill has never, so far as we are informed, been owned separate from the land, or been treated otherwise than as a part of the realty. *Prima facie* the saw-mill and all its appoint-

ments would constitute a part of the real estate, *Davenport v. Shants*, 43 Vt., 546; and in this case no agreement, understanding or intent is shown that can control the *prima facie* case.

II. Aside from the saw-mill proper and the engine—of which we shall speak presently—we think the machinery in controversy remained personalty, and was lawfully removed as such. No single article of this machinery was made expressly for use in the building where it was placed, and not elsewhere; all of it was equally capable of beneficial use on being removed to and set up in some other building. It might therefore become a part of the real estate when affixed to it, if such was the intent, or it might remain personal estate if an understanding to that effect was clearly indicated or fairly deducible from the circumstances. *Rogers v. Brokaw*, 25 N. J. Eq., 496; *Blancke v. Rogers*, 26 N. J. Eq., 563; *Voorhees v. McGinnis*, 48 N. Y., 278.

No express agreement of the parties that this machinery should become real estate, or on the other hand remain personal, is shown, though there is some evidence that as between Corsett and Robertson it was understood that the money loaned by the latter should be expended in machinery that would be subject to the lien of Robertson's mortgage. It does not appear that the other members of the firm of Corsett, Williams & Co. were parties to the understanding, or that Corsett himself had any definite purpose when he put in the machinery to make good his promise to Robertson if one was made by him. It appears beyond any controversy or question that the real estate was all the time owned by individuals in undivided interests, and no understanding or agreement is shown that it should be carried into the partnership as partnership property. The firm had the use of it, and nothing more. It therefore remained individual property, and the separate interests might have been dealt with by the owners at discretion. But it is quite as manifest that the ma-

chinery was brought in as partnership property, and constituted a part of its stock in business. As such it would have been liable to the payment of partnership debts, and must have been subject to the adjustment of balances between the partners.

No doubt had the real estate been partnership property, fixtures attached by the partners might have become a part of it. *Christian v. Dripps,* 28 Penn. St., 271. But in the case of *Adams v. Lee* we had occasion to point out the difficulty of any merger of the chattel in the realty when the ownership of the two was not identical; and in the well-considered case of *Trappes v. Harter,* 2 Cromp. & Mees., 153, it was held under circumstances analogous to the present that the machinery remained the property of the partnership. It is true the authority of that case was somewhat shaken by the subsequent case of *Ex parte Cotton,* 2 M., D. & D., 725, followed in *Cullwick v. Swindell,* L. R. 3 Eq. Cas., 249, but in *Cotton's* case *Trappes v. Harter* seems to have been wholly overlooked, and we cannot know what importance would have been allowed to it had it not escaped attention.

Where a partnership occupies individual real estate, and sets up trade fixtures in it, there seems to be no good reason why, when their occupation ceases, the partnership should not have the same right to remove the fixtures that any tenant would have under corresponding circumstances. The same reasons exist for encouraging the partners to make the best possible use of their possession, by protecting them in their expenditures upon the land so far as may be consistent with justice to others; and neither the owners of the fee nor their creditors are wronged by the removal of the fixtures, any more than they would·be if the occupant had with them no relations whatever but those of tenancy. The partnership for most legal purposes is a distinct entity;—having its own property, capable of contracting separate debts, having the right to sue·in equity its

several members, and to be protected against their conduct to the same extent that it might be against the conduct of strangers.    Then why should it not be protected against its fixtures being merged in the individual property of one or more of its members to which they had been attached for the better, more convenient and more profitable management of their business?    To us the case of *Trappes v. Harter* seems entirely reasonable, and it harmonizes with the views of this court as expressed in *Adams v. Lee*, 31 Mich., 440.

III. The case of the engine is somewhat different in the facts, but not in the principle.    When the rented engine was taken out, the one that was substituted belonged to Mrs. Williams, and that was exchanged for another, the copartnership of Corsett, Williams & Co. paying a difference of $300.    All the money put into it was therefore the money either of Mrs. Williams or of the copartnership, and Corsett, as owner of an undivided half of the real estate, could have had no equitable claim to it whatever.    Moreover the steam power was put in because it was needed to operate the new machinery which we have found did not become a part of the realty; and the reasons which apply to the machinery apply with equal force to the engine which was procured to operate it.

As this is sufficient to dispose of the controversy, we pass by without notice some other claims which are made on behalf of defendant Baker, and which become immaterial.    The decree will be modified in accordance with these views and remanded for execution.    The defendant Baker will recover the costs of this court.

The other Justices concurred.