WICKES BROS. *v.* HILL.

1. FIXTURES—LEASE OF CHATTELS—CONDITIONAL SALE.

A lease of chattels for a given term, at a fixed rental, with an option in the lessee to purchase at a specified price, stands upon the same basis as a contract of conditional sale, so far as the rights of third persons are concerned, where the property has been attached to real estate in such manner as, under ordinary circumstances, to become a part thereof. *Couse* v. *Tregent*, 11 Mich. 65, and *Powell* v. *Eckler*, 96 Mich. 538, distinguished.[1]

---

[1] As to the rights and liabilities of vendor and purchaser by conditional sale on default of payment, the authorities are collected in an extensive note to *Cole* v. *Hines*, (Md.) 32 L. R. A. 455.

2. SAME—PARTNERSHIP—UNITY OF TITLE.

Where the individual members of a copartnership purchased land for partnership purposes, and then bought as a firm, under a contract of conditional sale, an engine, boilers, and other milling machinery, and annexed them to the realty, there was sufficient unity of title to the land and machinery to support the contention of a mortgagee of the land that the machinery had become fixtures, and was covered by his mortgage.

3. SAME—MILLING MACHINERY—JUDICIAL NOTICE.

The court will take judicial notice that boilers and engines used in the equipment of a shingle mill are usually so attached as to become a part of the realty, and to pass by a deed thereof.

4. SAME—ESTOPPEL.

One who makes a conditional sale of milling machinery, knowing that it is likely to be so attached to the realty as to become a part thereof, cannot maintain his title to the property, after it has been so attached, as against a good-faith mortgagee of the land, even though the original contract of purchase expressly provided that the machinery should not become a fixture by reason of its being annexed to the realty.

Error to Schoolcraft; Steere, J. Submitted April 15, 1897. Decided December 21, 1897.

Trover by Wickes Brothers, a corporation, against William H. Hill and others. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

Plaintiff, under dates of October 1 and December 13, 1892, sold to defendant the Northern Cedar Shingle Company, a partnership, certain machinery, consisting of an engine, boiler, shafting, and other articles necessary for the equipment of a shingle mill. The contract of October 1st was evidenced by a receipt, signed by the shingle company as well as by plaintiff, reciting the property delivered, and then proceeded as follows:

"Which we agree to safely keep, and carefully use, and not remove from the county of Schoolcraft, State of Michigan; also to keep insured in the sum of —— dollars, for the benefit of said Wickes Brothers; also to pay all taxes

upon the same; and, at the expiration of nine months from the above date, return the same to said Wickes Brothers, at East Saginaw, Michigan, free of charges, and unincumbered. It being expressly understood that the title to said engine, boilers, and their trimmings and fixtures shall not pass out of said Wickes Brothers until the full sum hereinafter mentioned shall be paid as herein specified; that the same shall not become a fixture by being placed in any mill or other building, or by being annexed in any manner to the realty; and that the said Wickes Brothers may at any time enter upon the premises upon which said property is located, and take possession of the same, upon a violation of any of the agreements herein contained; and that any money already paid thereon shall be considered as applied as hereinafter mentioned."

The consideration was $1,600, $500 of which was paid on the execution of the receipt, and the balance evidenced by four promissory notes of $275 each. It then recited that, upon a compliance with the above provisions, "said Wickes Brothers will sell said property to the said Northern Cedar Shingle Company, and execute a bill of sale of the same." The provisions of the second contract were the same.

The goods were shipped and delivered to the shingle company, which erected a shingle mill, placed the machinery therein, and entered upon the business of manufacturing shingles, which it continued for a few months, and then failed. A considerable part of this property was built into the mill as it was constructed, and in a very substantial manner. The boilers were bricked in, sides and top, the engine bolted through a solid foundation, and the machinery bolted to the building in the usual manner. The boilers and engine were placed upon a foundation separate from the building, and could be removed from the building only by removing the bricks surrounding them, and taking out a part of the side of the building. The boilers, engine, and machinery were so attached to the building that, in the absence of any agreement to the contrary, they became part of the real estate, and title to them would pass by deed. The shingle com-

pany became indebted to its co-defendants, and on April 8, 1893, gave a mortgage upon all the real estate to secure past indebtedness, and also for advances then made, amounting to about $3,000. The shingle company was composed of Solomon Rothschild, Max Simon, and Charles Van Pelt. On September 29, 1892, a deed was made to them, as individuals, of the land upon which the mill and other buildings were erected by them as copartners. Before taking the mortgage, the bank officials caused the title to be examined, and inquired of the partners whether there was any incumbrance upon this property, and whether they owned the machinery. The partners replied that they did, that there was a small amount due upon it, but that they would take care of that. Plaintiff had no knowledge as to the character of the building to be erected, or of the mortgage, until some time after it was given.

The court directed a verdict for the plaintiff, leaving to the jury only the question of the value of the property.

*C. W. Dunton* and *E. C. Chapin*, for appellants.

*V. I. Hixson* ( *Watts S. Humphrey*, of counsel ), for appellee.

GRANT, J. (*after stating the facts*). 1. It is insisted by the plaintiff that these contracts were not conditional, but that they were leases for a fixed term, at a fixed rental, with an option in the lessee to purchase the property at a fixed price; and that, therefore, this case is ruled by *Couse* v. *Tregent*, 11 Mich. 65; *Powell* v. *Eckler*, 96 Mich. 538. Both of these cases involved personal property which, under no circumstances, could become real estate. We are therefore of the opinion that they have no application to a case like the present, involving property which, as is well known, is liable to be so attached to the realty as to become a part thereof. It follows that this provision of the contract leasing this property can stand upon no other or different basis than that of a conditional sale. The same acts that will estop

the vendor from setting up title in the one case will also estop him in the other.

2. It is next insisted by the plaintiff that this case comes within *Adams* v. *Lee*, 31 Mich. 440, and *Robertson* v. *Corsett*, 39 Mich. 777, upon the ground that there was no unity of title to the land and personalty. We cannot concur in this view. Collyer says: "Where partners purchase real estate for the purposes of the partnership, it is usually conveyed to them as tenants in common." 1 Colly. Partn. § 113. See, also, *Pepper* v. *Pepper*, 24 Ill. App. 316. While the record is not as complete upon this point as it might be, it is evident that this real estate was purchased by the partners for partnership purposes, and that it was so used. The partners, the tenants in common, purchased the personalty, and attached it to the real estate. As we read *Robertson* v. *Corsett, supra*, we understand that the title to the real estate was in two of the three partners, in which case there would, of course, be no unity of title.

3. All these parties except the shingle company have acted in good faith, and the difficult question presented is, Whom does the law protect? It is insisted by the defendants that the case falls within the following decisions of this court: *Knowlton* v. *Johnson*, 37 Mich. 47; *Ingersoll* v. *Barnes*, 47 Mich. 104; *Coleman* v. *Manufacturing Co.*, 38 Mich. 30; *Detroit, etc., R. Co.* v. *Busch*, 43 Mich. 571; and several other cases cited from other courts. It is contended on the part of the plaintiff that the case falls within that of *Lansing Iron & Engine Works* v. *Wilbur*, 111 Mich. 413, and authorities there cited, wherein it is stated:

"It is well settled in this State that the vendor may retain title to personal property sold until paid for, and that the vendee cannot, before his title becomes absolute, pass a good title, and that the good faith of a purchaser from the vendee is immaterial; nor is the question of notice of the vendor's rights material."

115 MICH.—22.

This language must be construed with reference to the facts of that case, which were that the defendant had taken a chattel mortgage upon the machinery in dispute, and afterwards purchased the real estate. All the parties had treated it as personal property, and the trial court, in his charge, said that the chattel mortgage "was notice to her of the character of the property," and it was immaterial whether she purchased in good faith, and without notice of the vendor's rights. The question now before us was not involved in that case. In *Knowlton* v. *Johnson, supra,* the lessee bought and attached the waterwheel, which was the subject of the controvery, in such a manner that it was impossible to remove it without injury to the mill. The lessor protested against removing the old wheel and putting in the new one. The vendors of the new wheel knew where the wheel was to be placed, and contracted with reference to it. They were held estopped to set up a claim of title as against the mill owner. That case differs from this in that the plaintiff here had no knowledge of the manner in which this machinery was to be attached to the land, except that which is to be inferred from its knowledge of the usual construction of shingle mills, and the manner in which the engine, boilers, and machinery must be fixed therein in order to run properly and successfully.

The rule is settled beyond controversy in this State that, as to conditional sales of personal property retaining the title in the vendor until paid for, no subsequent vendee obtains the title while the property remains personalty. This is upon the theory that the possession of movable property, known as chattels, is not conclusive of ownership or right of possession, and that he who buys takes subject to the title of the real owner. When personal property is attached to, and becomes a part of, the realty, a different rule applies. Title of record and possession of real estate are usually conclusive, and a *bona fide* holder takes title free from any existing equities. As between the original vendor and vendee, no title passes,

and as between them the vendee cannot make it realty
contrary to his agreement. In such cases the intention
of the parties must govern. When, however, the vendor
sells machinery which it is well understood may, and,
in the absence of agreement, does, become part of the
realty by being so attached that it cannot be removed
without injury, and thereby places it in the power of his
vendee to so attach it, and sell or mortgage to innocent
third parties, the better and more just rule is that he must
suffer. *Haven* v. *Emery*, 33 N. H. 69; *Voorhees* v. *Mc-
Ginnis*, 48 N. Y. 278; *Taylor* v. *Collins*, 51 Wis. 123;
*Bass Foundry & Machine Works* v. *Gallentine*, 99
Ind. 525; *Jenks* v. *Colwell*, 66 Mich. 428; *Davenport* v.
*Shants*, 43 Vt. 546; Ewell, Fixt. 316 *et seq.; Porter* v.
*Steel Co.*, 122 U. S. 267; *Fryatt* v. *Sullivan Co.*, 5 Hill,
116; *Hunt* v. *Iron Co.*, 97 Mass. 279.

We may take judicial notice of the fact that some of
such machinery as was here sold is usually attached so as
to become a part of the realty, and a deed of the realty
carries with it the title to the machinery. In fact, it is
necessary to so attach it in order to make it useful. This
machinery was sold to be used in the construction of a
shingle mill. It was so used. Without it the mill was of
little value. There was nothing to give notice to the de-
fendant mortgagees that there was an agreement between
plaintiff and the shingle company that it was personalty.
They examined the title, and the records in the town
clerk's office, to ascertain if there was anything there to
indicate such intent. Nothing appeared. They also asked
the members of the partnership, and they informed them
that they held the title absolutely. We think this was an
exercise of good faith, and of all the precaution the law re-
quires on the part of a purchaser or mortgagee. We do
not think that any case in this court has gone to the ex-
tent of holding that one who makes such a conditional
sale, having good reason to believe that the property may
become realty, can maintain his title to the property as
against a purchaser or mortgagee of the realty in good
faith.

Some of the articles mentioned in the declaration are not real estate, and the testimony is not sufficient to enable us to determine what part is realty and what is personalty.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.