140   101
s148   284

1. RAILWAYS—EQUIPMENT — SALE — CONTRACT — RECORD — SUBSEQUENT PURCHASER—GOOD FAITH—QUESTION FOR JURY.

> Where one electric railway purchased, before its completion, all the assets of another, taking a guaranty of title to equipment, the question of its good faith, as against one who had sold equipment on a contract of conditional sale, is for the jury, though the contract of conditional sale was not acknowledged and recorded with the secretary of State in accordance with section 6336, 2 Comp. Laws.

2. SAME—GUARANTY—EVIDENCE.

> The taking of the guaranty is a circumstance which may be considered by the jury as bearing on the question of good faith.

3. SAME—TROVER—GOOD FAITH—BURDEN OF PROOF.

> In trover by the seller of electric-railway equipment on an unrecorded contract of conditional sale, against a purchaser from the buyer, the burden is upon plaintiff to prove defendant's lack of good faith or notice of his rights.

Error to Wayne; Hosmer, J. Submitted February 14, 1905. (Docket No. 65.) Decided May 12, 1905.

Trover by Walter G. Hogan against the Detroit United Railway. There was judgment for plaintiff, and defendant brings error. Reversed.

*Brennan, Donnelly & Van De Mark* ( *Geer & Williams*, of counsel), for appellant.

*Bowen, Douglas, Whiting & Murfin*, for appellee.

MONTGOMERY, J. This is an action of trover brought by Walter G. Hogan, assignee of the Northern Electrical Manufacturing Company, against the Detroit United Railway, to recover the value of certain electrical apparatus that came into the possession of the defendant by the pur-

chase by it of the property of the Detroit, Rochester, Romeo & Lake Orion Railway. The Detroit, Rochester, Romeo & Lake Orion Railway was an interurban electric road which extended from Royal Oak to Flint, with a branch from Rochester to Romeo. It was constructed and equipped under three certain contracts, dated respectively March 23, 1899, June 5, 1899, and June 5, 1900. The construction company received $1,100,000 of bonds, $470,000 of stock, and $30,000 in cash, which was in full payment for such construction and equipment. In January, 1901, the construction company entered into a written contract with the Northern Electrical Manufacturing Company for the purchase of the electrical apparatus in question. This contract provided that payment for this apparatus should be made in installments, and that the title to said apparatus should remain in the Northern Electrical Manufacturing Company until the purchase price should be fully paid in cash, and that the apparatus should be delivered within four months. The apparatus was not delivered within four months. In fact it was not delivered until the following September and October. On July 27, 1901, the Detroit, Rochester, Romeo & Lake Orion Railway entered into a contract with the Detroit United Railway for the sale of all its property. The negotiations preceding the execution of this contract were conducted on behalf of the Detroit United Railway by Mr. J. C. Hutchins, with the exception of the negotiations as to the purchase price, which were conducted by Messrs. Everett and Moore. Before entering into the contract Mr. Hutchins had an examination of the condition of the road made by the heads of three departments of the Detroit United Railway, viz., the general superintendent, superintendent of tracks, and superintendent of motive power. These superintendents furnished Mr. Hutchins with written reports of the examination made by them.

In the report of Mr. E. J. Burdick, superintendent of motive power, there is the following reference to the apparatus in question:

" They have also contracted for three 250 K. W. rotary converters, none of which are as yet in place, and from the present outlook will not be in shape for two or three months."

Mr. Burdick testified that he received his information concerning these rotaries from the men at work on the road, and that Mr. Ray, engineer of the Detroit Construction Company, verified the information; that he was informed by the men that the apparatus was to be of the Stanley pattern, but that he was not informed and never learned that it was to be installed by the Northern Electrical Manufacturing Company; that he had no information or knowledge whatever of the contract between the Detroit Construction Company and the Northern Electrical Manufacturing Company for the installation of this equipment. The contract of July 27th provided that the road should be completed in accordance with the recommendations contained in the reports of the three superintendents to Mr. Hutchins. The Detroit United Railway took possession of the road on August 1, 1901. This apparatus was installed by the Detroit Construction Company, under the supervision of a representative from the Stanley Company, in September and October, 1901, and was ready for operation the latter part of October or the 15th of November. The Detroit United Railway received its deed of the property from the Detroit, Rochester, Romeo & Lake Orion Railway in November, 1901, and paid the full purchase price for the property on December 2, 1901.

After the failure of Frank C. Andrews in February, 1902, the Northern Electrical Manufacturing Company first notified the Detroit United Railway of its claim to this apparatus. It is claimed that this was the first information that the Detroit United Railway had of the contract between the Detroit Construction Company and the Northern Electrical Manufacturing Company, and that the Northern Electrical Manufacturing Company claimed to hold title to the apparatus. There remained due the

electrical company under the contract the sum of $9,950, for which it had accepted the promissory note of the Detroit Construction Company, indorsed by Andrews, Winter, and Lau, dated January 4, 1902. The contract between the construction company and the electrical company had never been acknowledged and filed in the office of the secretary of State in accordance with section 6336, 2 Comp. Laws.

In June, 1902, because several creditors of Frank C. Andrews, including the Northern Electrical Manufacturing Company, threatened to institute involuntary bankruptcy proceedings against Andrews, the Union Trust Company paid the claim of the Northern Electrical Manufacturing Company, and took an assignment of its contract with the construction company in the name of Walter G. Hogan. It demanded the apparatus from the Detroit United Railway, and then brought this action and recovered judgment in the circuit court. The defendant claims that it is a bona fide purchaser of this apparatus, without notice.

It is contended that there was no evidence having any tendency to show that the defendant was not a bona fide purchaser for value, and that a verdict should have been directed for defendant. We think that the facts and circumstances were such as to leave it open to the jury to find that the defendant refrained from making inquiry or investigation, either because it was assumed that liens existed or would exist when the property was finally turned over, or, for reasons of its own, did not care to pursue an inquiry suggested by the situation. We by no means intimate that this was a necessary inference or one for the court to draw, but do hold that it was open to the jury to draw that inference if convinced of its truth. In reaching this conclusion, these facts, of which there was testimony, have weight: *First*, that it was known that the work of construction was incomplete; *second*, that the contract of July 27th was supposed to cover all the assets of the selling company, and that a guaranty was exacted.

This brings us to the second question raised, viz., the court ruled that the fact that a guaranty was taken might be considered as bearing upon the question of whether defendant was a bona fide holder.   It is strenuously insisted that this was error, that it in effect made the exercise of business prudence evidence of bad faith.   We are convinced, however, that, in the circumstances of this case, it was open to consideration by the jury for the purpose stated by the circuit judge.   Standing by itself, it would not have been admissible for the purpose suggested; but, when taken in connection with the fact that defendant was taking over the entire property, and took possession before its completion, and of its knowledge of the resources of the selling company, it was a circumstance bearing upon the question of good faith.   Under section 6336, 2 Comp. Laws, such a contract as that relied upon by plaintiff is not valid as against any subsequent judgment creditor, or any subsequent bona fide purchaser for value and without notice.

The circuit judge charged:

" There is no question about that, gentlemen of the jury.   Upon one who claims to be a bona fide purchaser for a valuable consideration the burden of proof always rests; and I am obliged to say to you about the burden of proof, as I have said to you, not as a panel, but to you as members of other panels, that the ' burden of proof ' or the ' preponderance of testimony' does not mean necessarily any class of testimony or any kind of evidence, or the number of witnesses, but it means that testimony which satisfies you of the very right of the case.   And if the Detroit United Railway has done that thing, it has sustained the burden of proof, and, if it has not done that, it has not."

In case of property, the possession of which has been procured of the plaintiff by fraud, the rule as to the burden of proof is as stated by the circuit judge.   *Whitaker Iron Co.* v. *Preston Nat. Bank*, 101 Mich. 150. Under the recording laws, where the question arises between a vendor and purchaser, the rule has been settled

for many years that when the purchaser shows the payment of a valuable consideration, and that no notice of the true owner's title appears of record, the burden is cast upon such owner to show notice of his rights brought home to such subsequent purchaser. *Shotwell* v. *Harrison*, 22 Mich. 419; *Hanold* v. *Kays*, 64 Mich. 439.

For the error in this instruction, the judgment is reversed, and a new trial ordered.

CARPENTER, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.