## DETROIT TRUST CO. *v.* DETROIT, FLINT & SAGINAW RAILWAY.

1. RAILROADS—MECHANICS' LIENS—STATUTES.
    A manufacturer who furnishes machinery for the power plant of an electric railway is not entitled to a mechanics' lien under 3 Comp. Laws, § 10710; Act No. 17, Pub. Acts 1903.

2. SAME—STATUTES—CONSTRUCTION—MORTGAGES — BONDHOLDERS' RIGHTS—WORDS AND PHRASES.
    The provisions of 2 Comp. Laws, § 6336, that the vendor and vendee of railroad equipment or rolling stock may provide by agreement for reservation of title to the property, should be construed in connection with 2 Comp. Laws, § 6426, by which after-acquired property becomes subject to a prior mortgage upon the rolling stock and equipments and other property, and the phrase "rolling stock and equipments" in the one section has the same meaning as "equipment or rolling stock" in the other; and the statutes so construed make a trust mortgage on the entire property a prior lien upon machinery furnished for the railway power house, over the rights of such vendor under a contract reserving title.

3. FRAUD—TRUST MORTGAGES—BONDHOLDERS' RIGHTS—PLEDGE.
    The holders of bonds of a corporation as security for materials furnished in constructing an electric railway are not precluded from sharing in the proceeds of such bonds on the foreclosure of the trust mortgage because they procured the bonds under a fraudulent statement of the purchase price in

collusion with the contractors, to whom they intended to allow a secret rebate, but may participate in the division of the proceeds to the extent of their equitable claim.

Appeal from Genesee; Wisner, J.   Submitted October 8, 1909.   (Docket No. 24.)   Decided December 31, 1909.

Bill by the Detroit Trust Company, trustee, against the Detroit, Flint & Saginaw Railway, the Praether Engineering Company, J. H. Kusell, trustee, and the Harrisburg Foundry & Machine Works for the foreclosure of a mortgage.   Defendants Praether Engineering Company, J. H. Kusell, trustee, and the Harrisburg Foundry & Machine Works filed answers in the nature of cross-bills to enforce mechanics' liens.   From a decree for complainants, and dismissing the cross-bills, said defendants appeal. Modified and affirmed.

*Rundell & Stockton* (*Edwin Henderson*, of counsel), for complainant.

*Keena Lightner & Oxtoby* and *Carton & Bray*, for defendants Praether Engineering Co. and J. H. Kusell, trustee.

*Hunt & Altland*, for appellant Harrisburg Foundry & Machine Works.

*Brown, Farley & Selby*, for defendant Detroit, Flint & Saginaw Railway.                             ❀

BLAIR, C. J.   The Detroit, Flint & Saginaw Railway, a Michigan corporation, organized for the purpose of building and equipping an electrical railroad from the city of Saginaw, in Saginaw county, to the city of Flint, in Genesee county, by the way of Bridgeport, and a spur from there to the village of Frankenmuth, for the purpose of financing the project, on the 13th day of January, 1904, gave a trust mortgage to the complainant, the Detroit Trust Company, as trustee, to secure the issue of bonds to the extent of $1,000,000.   The mortgage covered

all property then owned or that might thereafter be acquired, including franchises, etc. The road was only completed as far as Frankenmuth, a distance of some 12 or 13 miles, and bonds to the extent of $410,500 in all were issued and disposed of by the company, as follows: There were $130,000 of these bonds issued on February 16, 1904; $18,000 on May 25, 1904; $18,000 on July 14, 1904; $9,500 on October 6, 1904; $95,000 on December 1, 1904; $30,000 on May 31, 1905; $60,000 on October 19, 1905; and $50,000 on October 19, 1905—making a total of bonds issued of $410,500.

On October 25, 1904, a contract was made between the Reisinger-Praether Company (a copartnership composed of H. W. Reisinger, H. B. Praether, and A. G. McConnell), and the Detroit, Flint & Saginaw Railway, for the erection of a power plant for the railway company, at Bridgeport, Mich. This contract provided that the Reisinger-Praether Company was to receive for the building of the power plant and installation of machinery the cost of the same plus 10 per cent. of such cost. The contract contained the following provisions:

"All material to remain the property of the party of the first part until paid for in full in cash, or in part cash and part bonds of this railway company, as agreed on in writing between the parties to this contract prior to placing subcontracts or starting work, and as hereinbefore specified."

'On the same day, the railway company and two of its officers and directors individually entered into a security agreement with the Reisinger-Praether Company—

"To set aside, and do hereby authorize and empower our trustee, the Detroit Trust Company of Detroit, Mich., to set aside bonds of the Detroit, Flint & Saginaw Railway Company. * * * Said bonds to be held in escrow for you, and said bonds to become your absolute property in one and one-half times the amount of each note in case of default of cash payment at maturity of each respective note, with full power and authority on your part upon such default being made to withdraw from escrow one and one-half times the amount of each note in default

without recourse on our part therefor or for any part thereof. And we, the undersigned, now directors and stockholders of said railway company, as additional security for the payment of said notes as they respectively fall due, hereby, in consideration of the acceptance by you of said contract, agree and bind ourselves individually to indorse said notes as the same may be issued upon presentation of same to us, and upon failure on part of the drawer of the same to pay each note at maturity thereof, whether the same be protested or not, we hereby guarantee the payment of the same, and upon payment by us of said note or notes you are to deliver to us of such bonds to one and one-half times the amount of each respective note as may be in your hands, or authorize the said trustee in writing to issue the same to us as evidence of payment on our part of each respective note when paid."

Under this security agreement, bonds to the amount of $84,000 were deposited with the trust company from time to time during the progress of the work. On March 14, 1906, the Praether Engineering Company, assignee of the Reisinger-Praether Company, authorized the trust company to deliver $15,000 of these bonds to T. G. Sullivan, for which he paid $9,872.65. On the 29th day of May, 1903, the Harrisburg Foundry & Machine Works entered into a contract with the Reisinger-Praether Company, whereby the Harrisburg Company, as party of the first part, granted to the Reisinger-Praether Company, as party of the second part, "the exclusive right and privilege to sell the engines of the various patterns manufactured by them" in certain territory, including Michigan.

"The said party of the first part further agrees to furnish the engines to be sold by the said parties of the second part at their agent's prices, as the same may be from time to time changed and modified, and to give the said parties of the second part at least thirty (30) days' notice of any change that may occur in prices, the said parties of the first part to receive an additional sum for said engines equal to 25 % of the profits in each sale beyond the agent's prices as may be determined by the statement or memorandum furnished by the second party with each contract

placed for machinery, except in such cases where the machinery ordered from the party of the first part shall be a part of an installation of a complete power plant and the same is included in the general estimate, in which case the proportion of profits paid by the second party in excess of agent's prices shall be on a basis of 25% of 10% of the profits on said machinery furnished by the party of the first part."

On November 16, 1904, the Harrisburg Company delivered to the Reisinger-Praether Company a proposal, portions of which are as follows:

"Specifications for Two Fleming Standard Tandem Compound Engines for Direct Connection to 250 K. W. Railway Generators, for the Detroit, Flint & Saginaw Railway.
"To REISINGER-PRAETHER COMPANY,
                        "Pittsburg, Pa.
"*Dear Sirs:* It gives us pleasure to herewith submit for your kind consideration and acceptance the following proposition for furnishing you with machinery, as manufactured by the Harrisburg Foundry & Machine Works, Harrisburg, Pa., and such other work as hereinafter specified.
"We propose and agree to furnish you    *   *   *.   The title to this machinery shall not vest in the purchaser until it is fully paid for.    *   *   *   If notes are accepted, the title to said machinery shall not pass from us until such notes, and all extensions and renewals thereof, shall have been paid.    *   *   *   The taking of security other than provided for shall not operate as a waiver of our statutory lien, and consent is given that we may, without notice, accept security, and thereafter increase, diminish, exchange, or release the same.    *   *   *   We agree to furnish the materials and work herein specified for the sum of eleven thousand six hundred fifty dollars ($11,650.00). *   *   *   This proposal to be void unless accepted and returned on or before January 16, 1905, and is not to become binding on the Harrisburg Foundry & Machine Works until acknowledged by them at their general office at Harrisburg, Pa.
                    "Respectfully submitted,
        "HARRISBURG FOUNDRY & MACHINE WKS.,
                        "By H. W. REISINGER.

"The within proposal is hereby accepted this 30th day of December, 1904, and we hereby agree that the title to the property mentioned herein shall be and remain in the Harrisburg Foundry & Machine Works until the same shall be fully paid for. Further, upon default being made in any of the payments of the contract price of said machinery, that the said, the Harrisburg Foundry & Machine Works, are hereby given the right to enter the premises where the said machinery may be and remove the same as their personal property, without any liability whatever therefor, or for payments previously made. * * *

[Signed]　　　　　"Reisinger-Praether Co.,
　　　　　　　　　　　　"By H. B. Praether.

" Witness:————.

"January 5, 1905. The foregoing proposal and acceptance are hereby acknowledged and accepted by the Harrisburg Foundry & Machine Works at general office, Harrisburg, Pa.

　　　　　　　　"David Fleming, Vice Prest.
[Seal.]　"Attest: Abram L. Groff, Secretary."

October 26, 1905, the Reisinger-Praether Company transferred its business to the Praether Engineering Company, including the contract with the Detroit, Flint & Saginaw Railway Company, reserving, amongst other things:

"Contracts reserved and which do not pass under this agreement and bill of sale, the same having been assigned and transferred to H. W. Reisinger. (A) Selling contract between the Harrisburg Foundry & Machine Works and Horace W. Reisinger, H. B. Praether, and A. G. McConnell, dated May 29, A. D. 1903."

The Reisinger-Praether Company, in the construction of the power plant, purchased all of the material used from subcontractors. The plant was completed some time in November or December, 1905, and accepted by the railway company, which gave its notes for the amount due, upon which there remains due, exclusive of interest, the sum of $53,575.90. The Harrisburg Company invoiced the engines to the Reisinger-Praether Company at $11,650, and the railway company gave its notes on the basis of

this invoice price. The engines did not actually cost the Reisinger-Praether Company $11,650; but, by a secret agreement with the Harrisburg Company, they were entitled to a rebate of at least $1,139.60. On June 21, 1906, the creditors of the Reisinger-Praether Company, including the Harrisburg Company, agreed that—

" Mr. J. H. Kusell shall act for us in an advisory capacity. * * * It being understood that the amount due from the Detroit, Flint & Saginaw Railway is not to be settled for any sum less than the full amount of the claim of the Praether Engineering Company, without first being submitted to us and our consent in writing given thereto."

On the 7th day of July, 1906, the Praether Engineering Company assigned all of its interest in its claim against the Detroit, Flint & Saginaw Railway Company, including its claimed mechanics' and vendors' liens, in trust for the following parties and the amounts due each, viz. :

| | |
|---|---|
| The Dime Savings & Banking Co | $10,429.40 |
| The National Electric Co. | 7,261.09 |
| Aultman & Taylor Co. | 10,550.82 |
| The Harrisburg Foundry & M. Wks. | 10,393.51 |
| F. C. Werk | 2,819.38 |
| Am. Foundry & Cons. Co. | 5,327.72 |
| Henry R. Worthington | 405.91 |

On December 22, 1906, the creditors named in said agreement of July 7th entered into another agreement, wherein it was agreed :

"*First.* That in the execution of the said trust of July 7, 1906, the claim of the Dime Savings & Banking Company, as to which they are to have a preference over and above said other creditors, shall be and is hereby stated to be the sum of ten thousand seven hundred and sixteen dollars and twenty-two cents ($10,716.22), and that as to any other claims it may have against said Praether Engineering Company, it shall be entitled to the benefit of the securities held by said trustee, after the claims of said other creditors shall have been fully paid, principal and interest.

"*Second.* That in the execution of said trust after the

payment of said ten thousand seven hundred and sixteen dollars and twenty-two cents ($10,716.22) to said Dime Savings & Banking Company, the said claims as hereinbefore stated of other creditors shall be paid in full if the avails of said trust shall be sufficient for that purpose, and if not sufficient the same shall be divided among said other creditors *pro rata.*"

On January 9, 1906, the Praether Engineering Company filed a claim of mechanic's lien for $59,456.53. On March 10, 1906, the Praether Engineering Company filed in the office of the secretary of State the contract between the Reisinger-Praether Company and the railway company. On March 10, 1906, the Harrisburg Foundry & Machine Works filed its claim of mechanic's lien for $10,997.40, and on June 5, 1906, it filed in the office of the secretary of State a copy of its contract of January 5, 1905, with the Reisinger-Praether Company. On the 20th day of November, 1906, the railway company, having become insolvent and having defaulted upon its bonds, the complainant filed its bill in the court below for the purpose of foreclosing the mortgage and selling the assets of the company. The Praether Engineering Company and the Harrisburg Company, after the failure of certain special proceedings (see *Hogan* v. *Railway*, 140 Mich. 101 [103 N. W. 543], 148 Mich. 283 [111 N. W. 765], 154 Mich. 478 [118 N. W. 140]), filed answers in the nature of cross-bills, to which complainant filed answers. The Harrisburg Foundry & Machine Works alleged in its cross-bill, among other things:

"That this defendant is informed and believes that said engines and machinery are so related to the operation of said defendant railway that waste would be committed if said engines should be removed from said power house; that it is to the interest of this railway property that the said engines should be kept intact in said power house."

The relief asked for was: That defendant be paid its claim; that in default of such payment it be decreed to have a vendor's lien; that in the event of a decree to sell

the property as an entirety it be paid first; that, if it should be deemed inequitable that it should be paid first, that it should be decreed to have a statutory mechanic's lien; that its lien upon the premises be decreed to be a prior and superior lien.

The cross-bill of the Praether Engineering Company and J. H. Kusell, trustee, contained the following allegation:

" That these defendants are informed and believe that said engines and machinery are so related to the operation of said defendant railway that waste would be committed if said engines should be removed from said power house; that it is to the interest of said railway property that the said engines should be kept intact in said power house."

As part of the relief asked for, the cross-bill prayed for a vendor's lien, a mechanic's lien, the property be sold as an entirety, and—

" That in case this court, by its decree, provides for a sale of the assets of said railway company, including the said power house and the engines and machinery therein contained, the said decree shall provide that out of the proceeds thereof there shall be first paid to these defendants the amount of their lien, or such reasonable part thereof as these defendants may be entitled to and as may be in accordance with equity. Or that, in lieu thereof, it be decreed that these defendants have title to the machinery, boilers, engines, and other property which were placed upon said real estate, in pursuance with the contract shown in Exhibit A hereto annexed; and that these defendants be permitted, by an order of this court, to remove them or such portion thereof as may not have become affixed to, and become a part of, the real estate. That said Detroit Trust Company be decreed to be the holder of the $69,000 in par value, of bonds set forth in paragraph 3 herein, for the use and benefit of these defendants, and that the same be applied, as far as may be necessary, to the payment of the amount due these defendants; and that, as to the amount of said bonds, these defendants be decreed to have a prior lien, under said trust mortgage, to the other parties to this suit and to the claims of other holders of bonds under said mortgage."

Early in the course of the trial, the following occurred, with reference to the manner in which the engines were attached to the realty:

"*The Court:* I understand it to be the claim from the start in this case—I have not read the pleadings—but it has been the claim here, and I suppose the pleadings must cover the proposition, that it would claim that this property was so attached to the freehold there that it could not be severed, and that a lien would not attach. That must have put you on your guard about your witnesses.

"*Mr. L'Esperance:* Assuming that, for the purpose of argument, if the court please, I think when it comes down to an argument on that proposition that we can show to the court that the law, as construed by our court in this State and in the various States in the country and the United States court, it is held that the mere fact that the property is so attached, personal property is so attached to the realty, as to become a part, it does not in any respect deprive the vendors of that lien to which he is entitled.

"*The Court:* I did not make any decision on that proposition. I am simply calling your attention to the propositions that were in the case.

"*Mr. L'Esperance:* We are prepared to meet that and admit that the property is (take this on the record), admit that the engines are so attached to the realty, so attached to that power house station, as to become a fixture there."

At the close of the case, the following occurred:

"*Mr. L'Esperance:* I wish to withdraw from the record in view of the examination of Mr. Woodford and Mr. Zerfoss in reference to the manner in which this property is attached to the premises, by myself, on cross-examination by the gentlemen on the other side, my statements that these engines were so attached to the power house as to become a fixture. The question as to whether it is or is not a fixture is purely and simply a question of intention. * * *

"*The Court:* I will have to consider it. I won't permit its withdrawal. I will have to consider the concession with view of the withdrawal, having been made after all the witnesses are excused and the case closed."

Much testimony was taken in open court, and the court

entered a decree of foreclosure. The decree established the mortgage as a prior lien to all other liens or interests of whatsoever nature, ordered the property sold as an entirety, found that the defendants Praether Engineering Company, J. H. Kusell, and Harrisburg Foundry & Machine Works had no valid liens, that the bonds held in trust under the security agreement were obtained by fraud and deceit and should be canceled, and denied to the appealing defendants any right to share in the proceeds of the foreclosure sale.

"* * * But it is also the intention of the court by this decree to leave to the said Praether Engineering Company, J. H. Kusell, trustee, and Harrisburg Foundry & Machine Works the rights to bring action or suit at law against the defendant, Detroit, Flint & Saginaw Railway Company, to recover the value of the machinery and appliances furnished by said parties to said Detroit, Flint & Saginaw Railway Company."

From this decree, the defendants Praether Engineering Company, Harrisburg Foundry & Machine Works, and J. H. Kusell, trustee, have appealed to this court.

The important question which presents itself for our consideration at the threshold of the case is that which concerns the validity of the liens claimed by the appellants. The bonded indebtedness secured by the mortgage, exclusive of the $69,000 in escrow, was much greater than the total value of the railway company's assets, and it is apparent that, unless the appellants, by virtue of their claimed liens, had acquired interests superior to those of the mortgages, they have no standing to question the decree, except as to their claimed right to share in the proceeds of the sale to the extent of the $69,000 of bonds. The validity of the claimed mechanics' liens, apart from questions of procedure, depends upon the construction of our statute providing for such liens. See 3 Comp. Laws, § 10710, as amended (Act No. 17, Pub. Acts 1903). This statute came under the consideration of the United States circuit court of appeals, sixth circuit, on appeal from the decree of

the circuit court for the eastern district of Michigan, in the case of *Pennsylvania Steel Co.* v. *Lumber Co.*, 63 Fed. 11, 11 C. C. A. 11. The eminent judges who constituted the court, after much consideration and examination of authorities, reached the conclusion that the statute was not intended to give a lien for the materials used in the construction of a railroad. We are satisfied that the court correctly interpreted our statute, so far as concerns materials furnished to become an integral and permanent part of the railway system, and that the property upon which the mechanics' liens are claimed in the instant case is as much outside of the statute as the rails in the case referred to. *Phœnix Iron Works Co.* v. *Trust Co.*, 83 Fed. 757, 28 C. C. A. 76, and cases cited; *Detroit United Ry.* v. *State Tax Com'rs*, 136 Mich. 96 (98 N. W. 997).

The Vendors' Liens or Conditional Sales. Section 35 of the train railway act, under which the Detroit, Flint & Saginaw Railway was organized (2 Comp. Laws, § 6426), provides as follows:

" It shall be lawful for any corporation or association organized under the act hereby amended, for the purpose of building and operating street railways, to borrow money for the purpose of constructing and operating the road or roads proposed to be constructed by them, and for that purpose to mortgage, or create any other lien upon their franchise, road, superstructure-fixtures, rolling stock and equipments; and whenever such corporation or association shall have acquired a simple easement or right of way for its proposed road, or any part thereof, and shall have made and filed its articles of association in conformity to the provisions of the act hereby amended, any mortgage or mortgages executed by such corporation or association, upon the route or routes where such easement or right of way has been obtained, as aforesaid, shall be a legal and valid lien upon the right of way so obtained, to the entire extent of the interest of such corporation or association therein, and upon the superstructure and fixtures upon such route or routes, whether the same shall be built before or after, or partly before and partly after, such mortgaging, and any such mortgage shall be deemed to be a mortgage upon real estate."

It will be observed that the section authorizes a mortgage upon the "franchise, road, superstructure fixtures, rolling stock and equipments," and, in case the company has only acquired a right of way, makes the mortgage a valid lien upon the right of way and upon the superstructure and fixtures afterwards constructed thereon, and declares such mortgage to be a real estate mortgage.

The mortgage in this case expressly subjected after-acquired property to its lien; but, regardless of this provision, the statute quoted subjected the power plant to the lien of the mortgage, provided the same constituted superstructure or fixtures within the meaning of the statute. Under the pleadings, the concession of counsel, and the testimony in the case, the property in question must be deemed to be fixtures, unless such conclusion is negatived by the agreements retaining title. Leaving out of consideration, for the present, .the statute relative to conditional sales ( 2 Comp. Laws, § 6336), and the admissions of the pleadings and of counsel, we deem it settled by authority that the property in question constituted fixtures, and that the lien of the mortgage was superior to titles subsequently reserved· in the contracts for furnishing materials. *Phœnix Iron Works Co.* v. *Trust Co., supra; Porter* v. *Steel Co.,* 120 U. S. 649 ( 7 Sup. Ct. 741), 122 U. S. 267 (7 Sup. Ct. 1206); *Toledo, etc., R. Co.* v. *Hamilton,* 134 U. S. 296 (10 Sup. Ct. 546); *Wickes Bros.* v. *Hill,* 115 Mich. 333 (73 N. W. 375); *Detroit United Ry.* v. *State Tax Com'rs, supra; Watson* v. *Alberts,* 120 Mich. 508 (79 N. W. 1048); *Hunt* v. *Iron Co.,* 97 Mass. 279; *Bass Foundry & Machine Works* v. *Gallentine,* 99 Ind. 525; *Lake Shore, etc., R. Co.* v. *City of Grand Rapids,* 102 Mich. 374 (60 N. W. 767, 29 L. R. A. 195).

In *Wickes Bros.* v. *Hill, supra,* it is said:

"When, however, the vendor sells machinery which it is well understood may, and in the absence of agreement does, become part of the realty by being so attached that it cannot be removed without injury, and thereby places

it in the power of his vendee to so attach it and sell or mortgage to innocent third parties, the better and more just rule is that he must suffer."

In support of this conclusion, the court cite, among other cases, *Porter* v. *Steel Co.*, *Hunt* v. *Iron Co.*, and *Brass Foundry & Machine Works* v. *Gallentine, supra,* which were cases where the property sold with reservation of title was to be annexed to real estate covered by a prior mortgage.

In *Porter* v. *Steel Co.*, 122 U. S. 267 (7 Sup. Ct. 1206), it is said:

" It is claimed on behalf of the Smith Bridge Company, that the contracts between it and the railway company, for the construction of the bridges, provided that the bridges should remain the property of the Smith Bridge Company until the contract price for them should have been fully paid, and that, in default of such payment, the Smith Bridge Company should have the right to remove the bridges and bridge material; that the mortgages became a lien on the bridges only as the bridges became the rightful and legal property of the railway company; that Porter, before he purchased the bonds, had notice of the equities of the Smith Bridge Company growing out of their contracts; and that the First National Bank of Chicago had like notice before it acquired any interest in the bonds.    The contracts of the Smith Bridge Company were made in October, 1882, and in July, 1883.    The bonds were pledged to Dull and McCormick in January, 1882, and passed from them to Drexel, Morgan & Co. in January, 1883.    The bridges became a part of the permanent structure of the railroad, as much so as the rails laid upon the bridges or upon the railroad outside of the bridges. Whatever is the rule applicable to locomotives and cars, and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by a railroad company, covering after-acquired property, it is well settled, in the decisions of this court, that rails and other articles which become affixed to and a part of a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of *bona fide* creditors, as against any contract between the furnisher of the property and the railroad company, containing stipulations

like those in the contracts in the present case. *Dunham* v. *Railway Co.*, 1 Wall. (U. S.) 254; *Galveston R. R.* v. *Cowdrey*, 11 Wall. (U. S.) 459, 480, 482; *United States* v. *Railroad*, 12 Wall. (U. S.) 362, 365; *Dillon* v. *Barnard*, 21 Wall. (U. S.) 430, 440; *Fosdick* v. *Schall*, 99 U. S. 235, 251."

In *Hunt* v. *Iron Co.*, 97 Mass. 279, it is said:

"Nor do we suppose that a mortgagor in possession is competent to bind existing mortgagees by any arrangement to treat as personalty annexations to the freehold. The legal character of the rails, when once laid down, is determined by the law to be that of real estate. Mortgagees, as well as all other parties in interest, are entitled to the benefit of this rule of law, which can be taken from them only by their own waiver."

Considering the authorities in the light of the statute, we hold that mortgages given in accordance with the statute are not affected by reservations of title in subsequent contracts for furnishing materials, which when attached, except for such reservations, would become fixtures subject to the mortgage, unless subjected to the vendor's rights by section 6336, 2 Comp. Laws. That section provides:

"That in any contract for the sale of railroad or street railway equipment or rolling stock, it shall be lawful to agree that the title to the property sold or contracted to be sold, although possession thereof may be delivered immediately, or at any time or times subsequently, shall not vest in the purchaser until the purchase price shall be fully paid, or that the seller shall have and retain a lien thereon for the unpaid purchase money," etc.

The act containing this section was adopted after the adoption of the section of the train railway act previously quoted, and may properly be construed in connection with it. Considering the two acts together, we are satisfied that the words "equipment or rolling stock," in the one, have the same meaning as "rolling stock and equipments," in the other. It appears reasonably clear that in section 6426 "rolling stock and equipments" are distinguished

and differentiated from the franchise, road, superstructure, and fixtures, which, when the company shall have acquired a right of way, are subjected to the mortgage, "whether the same shall be built before or after," etc. By "rolling stock and equipments," as used in this section, we understand reference is made to the locomotives, cars, furniture, and other loose and movable personal property, as distinguished from the permanent fixed property forming an integral and essential part of the railway as an entirety. We see no reason for giving any different meaning to the same words as used in section 6336, and are therefore of the opinion that that section does not support the appellant's position.

It remains only to consider whether the appellants were entitled to share in the proceeds of the sale to the extent of the bonds held in trust under the security agreement, participation in which was denied them by the circuit court, because, among other grounds therefor as found by him, the bonds were obtained by fraud and deceit in swelling the cost of constructing the plant which formed the basis for the deposit of the bonds.

The question of fraud was the principal question of fact to which the testimony was directed, and much testimony was put in upon that subject. It would extend this opinion to an inordinate length if we should undertake to review the testimony bearing upon this question. We therefore content ourselves with a brief statement of our conclusions reached after a careful examination of the entire record. It is undisputed that the bills for construction furnished to the railway company by the Reisinger-Praether Company were largely in excess of the actual cost, upon which their profit of 10 per cent. was to be computed, and that the amount of this excess was not specifically shown to the court. It is also undisputed that the Harrisburg Company laid the foundation for a successful perpetration of the fraud, by furnishing an invoice to the Reisinger-Praether Company, which stated the cost of the engines at a sum largely in excess of the actual

cost to the Reisinger-Praether Company. It is strenuously contended, however, that the Harrisburg Company had no contractual relations whatever with the railway, that the transaction with the Reisinger-Praether Company was the ordinary transaction of purchase and sale, and that it owed no duty to the railway company. It is also contended that there is no evidence of any fraud on the part of the Harrisburg Company, or of knowledge on its part of the terms of the contract between the railway company and the Reisinger-Praether Company as to the compensation to be paid. It would be unreasonable to suppose that the Harrisburg Company was making the contract with the Reisinger-Praether Company in ignorance of the terms of their contract with the railway, when the profit of the Harrisburg Company depended in part upon the profits of the Reisinger-Praether Company beyond the agent's prices. Furthermore, Mr. Reisinger testified that, at the time the contract was forwarded to the Harrisburg Company for its approval—

"We made them a statement showing the net cost, plus our profit, showing the amount of the contract. * * *

"Q. And you gave them to understand that in furnishing the engines they could receive the agent's price and 25 per cent. of this profit which you added?

"A. Yes, sir."

We are entirely satisfied, from the nature of the transaction, the relations of the parties, the contract between them, the testimony of Mr. Reisinger, and the surrounding facts and circumstances disclosed by the record, that the Harrisburg Company sold the engines, through its agent and representative, to the Reisinger-Praether Company for the railway company with full knowledge of the terms of the contract with the railway company, and stated a false price in their invoice, with the fraudulent purpose of swelling the profits of the Reisinger-Praether Company and of themselves. We have concluded, however, although not without some hesitation, that the appellants are entitled to have the benefit of that maxim of

equity jurisprudence that he who asks equity must do equity.  Although appellants have not shown the exact amount to which they are equitably entitled, the evidence indicates that the increase over the contract price was not much in excess of 10 per cent., and we do not think that it would be equitable to punish them by the forfeiture of the entire amount of their claim, provided the amount equitably due them can be limited, with the reasonable assurance that such limitation will not afford them compensation beyond what would be justly due under .the contract.

We are satisfied that a deduction of 20 per cent. from the prices made to the railway company will sufficiently protect the rights of all parties.  If, however, complainant is not satisfied with such deduction, a reference may be had to the court or a circuit court commissioner for the determination of the amount thereof.

We are therefore of the opinion that the parties entitled to the benefit of the security agreement should have the right to participate in the proceeds of the mortgage sale, in the proportion which the bonds to which they would have been entitled on the basis of their reduced claim bear to the total of the bonds actually issued and secured by the mortgage.

The decree appealed from may be modified in conformity with this opinion, and, as so modified, is affirmed, with costs of this court to appellants.

Grant, Montgomery, Ostrander, and Hooker, JJ., concurred.